**Emanuel Panteles, Appellee, v. San Arsht, Appellant.**

1. TRESPASS—*duty to minimize damage.* In an action by the tenant against his landlord for trespass committed by the removal of the roof of the demised premises, a judgment for the plaintiff cannot be sustained where the evidence is conflicting as to the property damaged and as to whether or not the tenant consented to the removal of the roof in making repairs, but shows that the damage was caused chiefly by rain and that the tenant could have avoided it by covering or protecting his property or removing it to another portion of the premises but that he made no effort to do so.

2. ARGUMENTS OF COUNSEL—*impropriety.* It is reversible error for counsel in his closing argument to refer to defendant as a Jew and to comment on his wealth, power and personal appearance in an odious and prejudicial way and to state that if the defendant's counsel had had more peremptory challenges, none of those on the jury would have been chosen, where none of such matters has any connection with any issue in the case.

3. AGENCY—*extent of principal's liability for unauthorized tortious act of agent.* In an action against a landlord for trespass alleged to have been committed by the removal of the roof of demised premises by a contractor who was employed to make repairs thereon, it is error to instruct the jury that if the landlord employed an agent for one purpose he would be liable for all the acts of such agent whether within or without the scope of his agency.

Appeal by defendant from the City Court of West Frankfort; the Hon. WILLIAM G. MITCHELL, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded. Opinion filed January 26, 1923.

FRANK E. TROBAUGH and LAYMAN & JOHNSON, for appellant.

LAMKIN & DIAL and G. A. HICKMAN, for appellee.

MR. JUSTICE BARRY delivered the opinion of the court.

In an action of trespass appellee recovered a verdict and judgment for $875. Appellee was a tenant of appellant from month to month and conducted a shoe-shining parlor. He also cleaned and blocked hats and pressed clothes. The premises comprised two one-room buildings joined together. The one in front was made of concrete blocks and the other was of tin construction.

The declaration charged that while appellee was in the peaceable possession of the premises appellant, with force and arms, broke and entered therein, tore the roof, doors and windows from the building and then and there broke, mutilated and destroyed various articles of personal property contained in said building and which were the property of appellee; that prior to said occurrence appellee had conducted a thriving and profitable business and that by reason of the premises he was hindered and prevented from conducting his business and lost large gains and profits. Appellant pleaded that the acts done were with the permission, leave and license of appellee.

Appellant testified that he told appellee he wanted to make repairs on the property and that appellee agreed that he might do so; that when he was ready for the contractors to go to work appellee told him to go ahead so long as he did not interfere with the front room; that he helped appellee move the stuff from the rear room to the front room and that everything of value was moved out; that after this was done appellee told him to go ahead and do whatever he wanted to with the rear building so long as he could stay in the front room until he got his rooms fixed up where he was going to move; that the carpenter then tore the roof off the rear building and

proceeded with the repairs, but that the roof of the front building was not disturbed until about thirty days after appellee had moved out of the same.

Appellant is corroborated in regard to all of those matters by the contractor who also says that before he began work appellee told him he had everything out of the rear that he cared for and that it was all right for him to go to work. Another witness says that appellee told him he was going to move and asked him to help him and that he helped him move a show case from the rear room to the front room. Other witnesses say that there was but little left in the room at the time the work was begun other than a soda fountain, which was crated and looked dirty and rusted.

Appellee denied that he gave appellant or the contractor permission to tear the roof off the rear building and said it was done without his consent; that he did not move the stuff from the rear room or tell them he had moved all that he cared for. One of his witnesses says that he saw appellee and another man carrying things from the rear room to the front room about the time work was begun. Appellee admits he moved a show case but says it was after the roof was torn off. He says that when the roof was removed from the rear room about two feet of the roof of the front building was also torn off. He says that the falling debris damaged his property and about three days later it rained and his goods were damaged by water.

Much of the damage for which appellee sought to recover on the trial was caused by the rain. While there is no charge in the declaration that his property was damaged in that way, yet there was no objection made to such proof. Appellee says that after the removal of the roof he moved a show case from the rear room to the front room but nothing more. There is no showing that he was unable by the exercise of reasonable effort to take care of the other

property before it was damaged by the rain. There is a serious conflict in the evidence as to what property was in the rear room when the roof was torn off and also as to whether any part of the roof of the front room was removed until after appellee vacated the premises.

Appellee knew when the roof was removed from the rear room. He must have known that if there was property therein it would be damaged in case it rained. The law under such circumstances required him to make ordinary and reasonable effort to prevent any loss. He had no right to look exclusively to a recovery of damages, but must exercise the same prudence to guard against loss as if he had no other redress. *Dobbins v. Duquid*, 65 Ill. 464. One cannot recover for damages to his property from acts which he knowingly permits to continue without making a reasonable effort and taking active steps to prevent or stop them. *Hartford Deposit Co. v. Calkins*, 186 Ill. 104.

It is the duty of a party injured by a tort or breach of contract to do all that is reasonably in his power to prevent the damage or reduce it to the smallest amount. *Cedar Rapids & I. C. Ry. & Light Co. v. Sprague Elec. Co.*, 280 Ill. 386. There can be no recovery for damages which might have been prevented by reasonable effort on the part of the person injured. *Scherrer v. Baltzer*, 84 Ill. App. 126. In that case the property of a tenant was removed from the building and placed on a porch where he allowed it to remain until it was badly damaged. See also *Nelson v. Buick Motor Co.*, 183 Ill. App. 323.

Even if it were admitted that appellant was guilty of the trespass charged, yet appellee could only recover for the natural consequences thereof and not for consequential damages which might have been avoided by reasonable care on his part. The state of the evidence is such that no one can tell what damages were the natural result of the alleged wrongful act

which could not have been avoided by reasonable effort.

The record discloses that in the closing argument to the jury counsel for appellee said: "This defendant is a Jew. The Bible tells the story of the Jews. This immaculate and all-powerful Sam Arsht is trying to oppress this poor, ignorant Greek. This poor, ignorant Greek has rights just as sacred as this Jew, if his clothes are not as fine and finger nails manicured as nicely. This case is the old story of the big fellow trying to eat up the little fellow. This jury, in addition to actual damages shown, may assess punitive damages, as a punishment to this defendant and as a warning to others."

"If there had been fifteen or twenty peremptory challenges, none of you fellows here in town would have been on this jury."

By no stretch of the imagination can such language be classed as argument. It could not, in any way, assist the jury in reaching a just and proper verdict and should never be uttered in a court of justice. It was highly calculated to poison and prejudice the minds of those whose duty it was to decide the case according to the law and the evidence. The fact that the court sustained an objection thereto did not destroy its pernicious effect. Counsel and litigants should understand that verdicts so obtained are worthless. In the very recent case of *Eshelman v. Rawalt*, 298 Ill. 192, the Supreme Court reversed the judgment because of improper remarks and conduct of counsel for appellee even though the trial court had sustained objections thereto.

The third instruction given on behalf of appellee is too broad. It is to the effect that if appellant employed an agent for one purpose he would be liable for all the acts of such agent whether within or without the scope of his agency. The judgment is reversed and the cause remanded.

*Reversed and remanded.*