Katherine PLATIS, Plaintiff–Appellant,

v.

David STOCKWELL,
Defendant–Appellee.

No. 79–2109.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1980.

Decided Sept. 9, 1980.

Michael W. Rathsack, Chicago, Ill., for plaintiff–appellant.

Joseph McDonough, Chicago, Ill., for defendant–appellee.

Before PELL and SPRECHER, Circuit Judges, and JAMESON, Senior District Judge.*

PELL, Circuit Judge.

Rule 51 of the Federal Rules of Civil Procedure provides, insofar as it is relevant to this action, that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires . . . ." The principal issue in this appeal is whether the Supreme Court's opinion in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), requires a federal court sitting in a diversity case to apply a seemingly contrary state statute.

## I.

This negligence action was brought by the plaintiff, Katherine Platis, to recover for injuries she sustained while skiing in Aspen, Colorado. Briefly, plaintiff and de-

fendant collided with each other shortly after disembarking from a chairlift. At the time, both parties were bearing to the right toward an area where their ski class was assembling, and were skiing slowly. Plaintiff, who had been skiing slightly downhill of defendant contended at trial that custom required the uphill skier to yield to the downhill skier. The defendant, on the other hand, contended that the only ski custom applicable to the circumstances of the accident was that a skier be in control at all times.

The case was tried before a jury under Colorado's comparative negligence statute, Colo.Rev.Stat. § 13–21–111 (1973 & Supp. 1976). That statute requires that the jury apportion negligence, that a plaintiff cannot recover unless the jury finds plaintiff's negligence to be not as great as the defendant's, that the jury make its findings in a particularized special verdict form set forth in the statute, and, of special relevance to this litigation, that the jury be instructed on the "effect of its finding as to the degree of negligence of each party." *Id.* at § 13–21–111(4).

The latter requirement was added to the statute by amendment in 1975, and the parties are in agreement that the failure of a trial judge in a Colorado state tribunal to inform the jury that the plaintiff will be unable to recover if he or she is found to be negligent in a degree of fifty percent or greater is reversible error, even in the absence of an objection by the parties. In the court below, the district judge held a meeting on instructions and emphasized his concern that the special verdict form be as clear as possible in order to avoid confusing the jury. During the course of the meeting, counsel for plaintiff mentioned at one point that the plaintiff could not recover if her negligence were found to be fifty percent or greater. The following day, the court distributed the special verdict forms which it had revised in order to make them more understandable to the jury. The special verdict forms were as follows:

* William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

We, the jury, present our Answers to Questions submitted by the Court, to which we have unanimously agreed:

Question No. 1: Was the defendant, David Stockwell, negligent? If your answer to this question is "no", answer no further questions.

Answer No. 1: _ _ _ _ _ _ _ _ _ _ _

Question No. 2: If your answer to the first question was "yes", state the amount of damages, if any, you find were sustained by the plaintiff and proximately caused by the accident.

Answer No. 2: _ _ _ _ _ _ _ _ _ _

Question No. 3: Was the plaintiff, Katherine Platis, also negligent?

Answer No. 3: _ _ _ _ _ _ _ _ _ _

Question No. 4: If your answers to both the first and third questions are "yes", then you are to answer this question:

> Taking the combined negligence that proximately caused the injuries as 100 percent, what percent of that negligence was attributable to the defendant and what percent was attributable to the plaintiff?

Answer No. 4: _ _ _ _ _ _ _ _ _ _

| | | |
|---|---|---|
| Percent attributable to defendant, David C. Stockwell | _ _ _ _ _ _ _ _ _ _ % | |
| Percent attributable to plaintiff, Katherine Platis | _ _ _ _ _ _ _ _ _ _ % | |
| | Must Total | 100% |

The instructions given to the jury contained a lengthy explanation of the purpose of the special verdict, but did not inform the jury that plaintiff could not recover if her negligence were found to be in a degree of fifty percent or more. Plaintiff's trial counsel neither requested such an instruction nor objected to the failure of the court to give one. The jury found that both parties had been negligent, and that the negligence was attributable to the plaintiff in a degree of sixty–five percent, with thirty–five percent being attributable to the defendant. It also found that plaintiff's damages were in the amount of $52,500. Judgment was entered on the verdict, and the trial judge subsequently denied plaintiff's motion for a new trial, which again raised no issue regarding the correctness of the jury instructions.

## II.

■ Plaintiff, *inter alia*, argues on appeal that the fact that the $52,500 damages found by the jury is exactly thirty–five percent of the amount requested by plaintiff's trial counsel in his closing argument ($150,000) indicates that the jury was confused as to what the effect of their findings would be on plaintiff's right to recover, and that this confusion in itself is grounds for a mistrial. She theorizes that the jury first figured her damages at approximately $52,500, and then manipulated the apportionment of negligence percentage against the relief requested during argument to arrive at what they thought was a just recovery. Whether the jury in fact arrived at its answers to the special verdict in this manner is purely conjectural, a process in which we decline to participate, and the trial judge quite properly exercised his discretion in denying plaintiff's motion for a new trial on this ground.

■ Similarly, we reject plaintiff's contention that the trial judge abused his discretion in denying her motion for a new trial on the ground that the verdict was against the weight of the evidence. The jury might well have concluded from the evidence that plaintiff was simply not skiing under control and that her negligence in this regard constituted sixty–five percent of the cause of her injuries.

## III.

Plaintiff next contends that because the trial court's failure to give the "fifty percent" instruction would have been reversible error had the action been brought in the state courts of Colorado, the Supreme Court's "outcome determinative" holding in *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) requires reversal here. Because plaintiff failed to comply with Federal Rule 51, we disagree.

The *Erie* doctrine [1] is not a monolithic legal principle to be employed in resolving all disputes as to the applicable law or procedure in diversity actions. For an excellent discussion, *see* Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693 (1974). Rather, a so–called "*Erie* problem" in reali-

---

1. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ty may present either of two distinct legal issues, each of which requires a different analysis. The first occurs when a federal non–statutory rule is in conflict with the applicable state law. In such a case, the appropriate analysis is that set forth in *Guaranty Trust, supra.* The second occurs when, as here, the disputed issue is covered by a Federal Rule of Civil Procedure or other rule promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072 (1976), in which case the framework for examining the issue is established in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

*Erie Railroad Co. v. Tompkins, supra,* established the proposition that a federal court sitting in a diversity action must, in matters of general jurisprudence, apply the controlling substantive law of the state. Subsequently in *Guaranty Trust, supra,* the Court held that where no recovery could be had in a state forum due to the fact that the action had been barred by the state statute of limitations, a federal court in a diversity case was precluded from taking cognizance of the suit. The rationale of *Guaranty Trust* was that "the outcome of [diversity] litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." 326 U.S. at 109, 65 S.Ct. at 1470. This holding was later applied in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) and more recently in *Walker v. Armco Steel Corp.,* —— U.S. ——, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), both of which held Rule 3 of the Federal Rules of Civil Procedure, which provides that an action is commenced by the filing of a complaint, inapplicable for purposes of tolling a state statute of limitations. In *Ragan* and *Walker* the complaints had been filed within the time permitted, but the defendants were not served until after the statutory time period had elapsed. The state laws in issue deemed actions commenced for purposes of the statute of limitations at the time of service. The Court

held the state laws to be controlling, not because state law displaced the Federal Rule, but rather because Rule 3 contained no indication that it was intended to serve as a mechanism for tolling the statute of limitations and was therefore not sufficiently broad to control the issue.

In *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), however, the Court held that where the question presented was clearly covered by a Federal Rule, the test to be applied was not that contained in *Erie* and *Guaranty Trust,* but instead involved a construction of the Rules Enabling Act. That statute provides in part:

> The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.
>
> Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury.

28 U.S.C. § 2072 (1976). Assuming that the disputed issue is in fact covered by a Federal Rule, the question then, is whether application of the Rule will abridge, enlarge, or modify any substantive right. If not, the only remaining issue is whether the Rules are within a grant of federal authority in the Constitution.

With respect to the question of whether Rule 51 is sufficiently broad to govern the resolution of the issue, we think that this is clearly the case. The Rule expressly states that a party must object to the giving or the failure to give an instruction as a prerequisite to the assignment of error, a requirement which the parties agree is in direct conflict with the Section 13–21–111(4) of the Colorado comparative negligence statute as it has been construed by the courts of that state.

We likewise think that Rule 51 is within the ambit of the Enabling Act. As in *Hanna,*[2] it is true that application of the Feder-

---

**2.** In *Hanna v. Plumer, supra,* the Court held that Rule 4(d)(1), which governs the manner in which process is served on an individual, is

controlling over a contrary state service of process rule.

al Rules of Civil Procedure will have an effect on plaintiff's rights in that she will be precluded from raising the claimed deficiency on appeal. This effect, however, is not an enlargement, abridgment, or modification of the comparative negligence doctrine, which is the substantive rule of law at issue. It is rather a procedural directive, aimed at augmenting the fairness and efficiency of the litigation process in federal court. *See*, Ely, *supra*, at 725.

The final question of whether the promulgation of Rule 51 was within the constitutional power of the legislative and judicial branches of the federal government, has, in our opinion, also been resolved in *Hanna* :

> We are reminded by the Erie opinion that neither Congress nor the federal courts can, under the guise of formulating rules of decision for federal courts, fashion rules which are not supported by a grant of federal authority contained in Article I or some other section of the Constitution; in such areas state law must govern because there can be no other law. But the opinion in Erie, which involved no Federal Rule and dealt with a question which was "substantive" in every traditional sense (whether the railroad owed a duty of care to Tompkins as a trespasser or a licensee), surely neither said nor implied that measures like Rule 4(d)(1) are unconstitutional. For the constitutional provision for a federal court system (augmented by the Necessary and Proper clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.

380 U.S. at 471–72, 85 S.Ct. at 1144. (footnote omitted).

■ We therefore hold that the requirements of Rule 51 must be adhered to in diversity actions in federal court.

## IV.

■ Plaintiff next argues that notwithstanding the applicability of Rule 51, the judgment should nevertheless be reversed due to the claimed deficiency in the instruction under the "plain error" doctrine. We acknowledge that an appellate court has discretion to disregard Rule 51 when the error raised is plain and may result in a miscarriage of justice. As Justice Stone observed in *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936):

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 160, 56 S.Ct. at 392. We agree, however, with the Court of Appeals for the Second Circuit that "this discretion should be exercised *sparingly* and only in *exceptional* cases." *McNamara v. Dionne*, 298 F.2d 352, 355 (2d Cir. 1962) (emphasis added). We do not think that this is such an exceptional case. The trial judge's failure to give the requested instruction does not appear to have resulted in a miscarriage of justice because the jury found in any event that sixty–five percent of the negligence was attributable to the plaintiff. Whether this finding would or would not have been different had the jury been aware that its apportionment would bar plaintiff's recovery is purely speculative and is not an appropriate ground for the extraordinary relief sought.

■ Secondly, the "error" raised here was not of an obvious nature, and indeed, while we are not squarely presented with the question, we do note that it may well not have been error at all. Although a federal court in a diversity case must instruct a jury on all the elements of the cause of action under state substantive law, the *manner* of giving an instruction has been held by every court considering the question to be a procedural matter, controlled by federal law. *See, e. g., Wright v.*

*Albuquerque Auto–Truck Stop Plaza, Inc.,* 591 F.2d 585, 587 (10th Cir. 1979); *Houston v. Herring,* 562 F.2d 347 (5th Cir. 1977); *Seltzer v. Chesley,* 512 F.2d 1030, 1034 (9th Cir. 1975); *Stafford v. Southern Farm Bureau Casualty Insurance Co.,* 457 F.2d 366, 367 (8th Cir. 1972). Although no Federal Rule of Civil Procedure governs the issue [3] and the appropriate analysis is that set forth in *Guaranty Trust, supra,* we are not inclined to agree that that decision mandates that a federal district judge follow state prescribed or state "pattern" instructions. The Court recognized in *Guaranty Trust* that "when, because the plaintiff happens to be a non–resident, such a right is enforceable in a federal as well as a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identical." *Guaranty Trust,* 326 U.S. at 108, 65 S.Ct. at 1469.

Accordingly, the judgment of the district court is

AFFIRMED.

---

3. Defendant has argued that Rule 49(a), which states in part that "[t]he court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact . . ." is preclusive of instructing the jury on the effects of their apportionment of negligence because such an instruction would inject other than factual elements into the deliberations of the jury. We do not think, however, that this Rule is sufficiently broad to be dispositive of the issue. *See, e. g., Walker v. Armco Steel Corp.,* — U.S. — , 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).