667 F.2d 606
 9 Fed. R. Evid. Serv. 911
 John Clinton ELLIS, Barbara Ellis and Frederick Ellis,
Plaintiffs-Appellants,
v.
CITY OF CHICAGO, a municipal corporation, Department of
Police of the City of Chicago, a municipal corporation and
Frank Kusar, individually, and as police officer of the
Department of Police of the City of Chicago, Defendants-Appellees.
 No. 80-2614.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 23, 1981.
Decided Dec. 15, 1981.
 
 John P. DeRose, DeRose & Russo, Oak Brook, Ill., for plaintiffs-appellants.
 William R. Quinlan, Corp. Counsel, Chicago, Ill., for defendants-appellees.
 Before PELL and CUDAHY, Circuit Judges, and DUMBAULD, Senior District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants John, Barbara, and Frederick Ellis appeal from a jury verdict in favor of defendants City of Chicago and Police Officer Frank Kusar in a suit for damages brought under the Fourteenth Amendment and 42 U.S.C. § 1983 (1976). Plaintiffs challenge several evidentiary rulings made by the district court, as well as the giving of a jury instruction which, plaintiffs allege, materially misstated the elements of their statutory claim. Because we find the rulings complained of either to be within the discretion of the district judge, or not to affect plaintiffs' substantial rights, we affirm the judgment of the district court.
 
 
 2
 * The incident giving rise to this civil rights action occurred on September 10, 1978, after the Chicago Police Department received a call on its emergency number from a telephone at 2905 North Troy Street, the residence of 21 year old John Ellis, a deaf mute, and his parents. Although the exact language of the call is in dispute, the parties agree that the caller told police that a man wanted by the Department was or had been present at that address. Officers Calandra and Kusar responded to the call. When the officers arrived at 2905 North Troy, they found the front door partially open and saw nobody outside the house. The pair knocked at the door and announced themselves as police officers but received no response. The two officers then entered the dwelling. Neither officer possessed an arrest or a search warrant at the time of entry.
 
 
 3
 As the officers proceeded through the house, they heard what one officer later described as "scratchy noises" coming from behind a closed kitchen door. As they approached the door, a large German shepherd dog emerged. Officer Kusar testified that the dog lunged at him, at which point he fired two shots, killing the animal. Following the shots, plaintiff John Ellis-the only family member home at the time-emerged from the bedroom. When Ellis realized that his dog had been shot, he became visibly upset and attempted to approach the animal. With his service revolver still drawn, Officer Kusar motioned Ellis away from the dog and led him to the front of the house. Officer Kusar then returned to the police station without ordering or conducting any further search of the premises. Following Kusar's departure, a young man from the neighborhood who could communicate with John Ellis through sign language was permitted to enter the dwelling.
 
 
 4
 On November 15, 1978, John Ellis and his parents filed suit against the City of Chicago, the Chicago Police Department, and Officer Kusar, alleging violations of their civil rights under 42 U.S.C. § 1983 (1976) and the Due Process Clause of the Fourteenth Amendment. At trial, Officer Kusar asserted a good faith defense and the City of Chicago asserted that any violation of plaintiffs' civil rights was not the result of official policy or custom. The jury returned a general verdict for defendants on October 8, 1980. This appeal by plaintiffs followed.
 
 II
 
 5
 Plaintiffs first allege that the trial court committed reversible error by giving a jury instruction which differed from the instruction requested by plaintiffs, and which, plaintiffs contend, incorrectly stated the essential elements of their 1983 claim. The challenged instruction provided in pertinent part that plaintiffs were required to prove by a preponderance of the evidence that "the defendant Frank Kusar lacked probable cause to enter the Plaintiffs' home and to shoot their dog." Tr. at 486-87. Plaintiffs' requested instruction, which the trial judge had indicated he would give "in substance but not in their precise language," Tr. at 420, stated that plaintiffs were obligated to prove "that defendant Frank Kusar knowingly entered the Plaintiffs' home without probable cause to enter thereto, shot and killed Plaintiffs' dog." Tr. at 486-87. Plaintiffs argue that by inserting the conjunctive "and" in their requested instruction, the trial judge materially altered its meaning and mislead the jury as to the burden of proof applicable to plaintiffs' claim. They contend that the challenged instruction incorrectly required plaintiffs to show that Officer Kusar lacked probable cause not only to enter plaintiffs' residence but also to shoot their dog, whereas plaintiffs' requested instruction properly required only a finding that Kusar lacked probable cause to enter the house.
 
 
 6
 We reject plaintiffs' claim for several reasons. First, and most important, plaintiffs are precluded from raising this issue on appeal, since they failed to object to the challenged instruction in the district court. See United States v. Ledesma, 632 F.2d 670 (7th Cir. 1980). Rule 51 of the Federal Rules of Civil Procedure explicitly provides that "(n)o party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict...." Fed.R.Civ.P. 51. The salutary purpose of this requirement is to permit the district judge to consider and correct any errors before the jury begins its deliberations, thus avoiding the delay and expense necessitated by a retrial. Where, as here, a party has been afforded proper opportunity to object to instructions in the district court, his failure to do so precludes appellate review. United States v. Wright, 542 F.2d 975, 981 (7th Cir. 1976), cert. denied 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977).[1]
 
 
 7
 Plaintiffs argue, however, that Rule 51 must be read in conjunction with Rule 46 of the Federal Rules of Civil Procedure,[2] and that, taken together, these rules do not require objections to jury instructions in all situations. Alternatively, plaintiffs contend that notwithstanding the applicability of Rule 51, they are entitled to reversal under the doctrine of "plain error." We reject these contentions. Rule 46 merely abolishes the necessity for formal exceptions to court rulings or orders. It does not abrogate the requirement that a litigant communicate his objection to the district court at the time a ruling is made. Thus, nothing in Rule 46 modifies the requirements of Rule 51, provided adequate opportunity for objection has been afforded. As to plaintiffs' allegation of plain error, we acknowledge that an appellate court has discretion to disregard Rule 51 when the claim of error is obvious and to ignore it may result in a miscarriage of justice. See Platis v. Stockwell, 630 F.2d 1202 (7th Cir. 1980); United States v. Atkinson, 297 U.S. 157, 160 (1936). This court has previously emphasized, however, that such discretion "should be exercised sparingly and only in exceptional cases." Platis v. Stockwell, 630 F.2d at 1206, quoting McNamara v. Dionne, 298 F.2d 352, 355 (2d Cir. 1962) (emphasis in original). We do not believe that these standards are met here.
 
 
 8
 Even if we were to consider plaintiffs' objection on its merits, however, we would not be persuaded by plaintiffs' argument. In order to establish an unconstitutional deprivation of property in the dog under either § 1983 or the 14th Amendment, plaintiffs were required to prove that defendants acted unacceptably in the shooting itself as well as in the allegedly improper entry. Indeed, certain other jury instructions, of which plaintiffs notably do not complain, stated that plaintiffs were obligated to prove not only the loss of their dog but also that defendants' conduct in causing the loss was unreasonable or culpable. Tr. at 492. These instructions correctly stated the applicable law. See Beard v. Mitchell, 604 F.2d 485, 495 (7th Cir. 1979). Second, to the extent that plaintiffs sought recovery based on the allegedly illegal search of their residence independent of any harm to their house or their dog, the district court propounded separate jury instructions concerning this theory.[3] Indeed, in this regard, the district judge charged the jury that if they found defendants to have acted illegally, they could award plaintiffs nominal damages even absent a showing of actual harm "as a recognition that (plaintiffs') constitutional rights had been violated." Tr. at 495.
 
 
 9
 In passing on the propriety of a challenged jury instruction, a reviewing court must consider the instruction in the context of the judge's entire charge. United States v. Rajewski, 526 F.2d 149 (7th Cir. 1975), cert. denied, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). Where, as here, the change complained of verges on the insubstantial, and the district court's instructions, taken as a whole, correctly state the applicable legal principles, failure to employ the exact language requested by plaintiffs does not constitute reversible error. Brandes v. Burbank, 613 F.2d 658, 668-69 (7th Cir. 1980).
 
 III
 
 10
 Plaintiffs also challenge various evidentiary rulings made by the district court. Specifically, plaintiffs claim that the trial judge erred in preventing counsel for plaintiffs from questioning defendant Frank Kusar about his justification for entering plaintiffs' dwelling, and in excluding testimony concerning the training and temperament of plaintiffs' dogs. In addition, plaintiffs argue that the district court committed reversible error by refusing to take judicial notice of a local climatological report indicating the temperature on the afternoon the incident occurred.
 
 
 11
 In evaluating plaintiffs' evidentiary claims, we bear in mind that decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court and will not be reversed on appeal unless they constitute a clear abuse of discretion. United States v. Micklus, 581 F.2d 612, 617 (7th Cir. 1978). Moreover, a party challenging the exclusion of evidence has the burden of demonstrating that his substantial rights have been prejudiced by the exclusion. Gilliam v. City of Omaha, 524 F.2d 1013, 1016 (8th Cir. 1975); 28 U.S.C. § 2111 (1976). As indicated by Rule 103(a) of the Federal Rules of Evidence:
 
 
 12
 Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and
 
 
 13
 ....
 
 
 14
 the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
 
 
 15
 Plaintiffs' objections fail to meet these standards. There is no showing that any of the evidentiary rulings complained of adversely affected plaintiffs' substantial rights or seriously hindered the presentation of their case. With respect to plaintiffs' questioning of defendant Kusar, although the district judge sustained defendants' objections to several somewhat rambling and argumentative questions on direct examination, counsel for plaintiffs was permitted to conduct substantially the same inquiry on redirect examination.[4]
 
 
 16
 Similarly, although the trial judge declined to take judicial notice of plaintiffs' proffered climatological report, plaintiffs were able to submit other evidence to establish the temperature on the afternoon in question.[5] Finally, with respect to the testimony concerning the temperaments of plaintiffs' dogs, plaintiffs made no offer of proof to indicate what, if anything, such testimony was designed to establish. Where, as here, the significance of excluded evidence is not apparent from the context of the questioning, a party appealing from the exclusion is required to have made an offer of proof demonstrating the import of the proposed testimony. Saltzman v. Fullerton Metals Company, 661 F.2d 647 at 653 (7th Cir. 1981), Fed.R.Evid. 103(a)(2). Because plaintiffs made no such offer of proof, and because we find no plain error in the trial judge's ruling, cf. United States ex rel. Wilson v. Coughlin, 472 F.2d 100, 109 (7th Cir. 1973), we cannot reverse the judgment on this ground.
 
 IV
 
 17
 Finally, in what we believe is their most significant assignment of error, plaintiffs claim that the trial court erred in refusing to permit counsel for plaintiffs to use leading questions during his direct examinations of Officer Calandra and Sergeant Holub, police officers employed by the City of Chicago. Since 1975, the use of leading questions has been governed by Rule 611(c) of the Federal Rules of Evidence. This rule provides that while leading questions should not normally be used on direct examination, they may be employed "(w) hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed.R.Evid. 611(c). Plaintiffs argue that the trial judge committed reversible error by refusing to recognize Officer Calandra and Sergeant Holub as witnesses identified with an adverse party for purposes of this Rule.
 
 
 18
 Before the adoption of Rule 611(c), the use of leading questions on direct examination required either a showing of actual hostility or a determination that the witness being examined was an adverse party, or an officer, director, or managing agent of such an adverse party. See Fed.R.Civ.P. 43(b) (repealed Jan. 2, 1975 by Pub.L. 93-595, § 3, 88 Stat. 1926); Heater v. Chesapeake and Ohio Ry. Co., 497 F.2d 1243 (7th Cir.), cert. denied 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974). These limitations were designed to guard against the risk of improper suggestion inherent in examining friendly witnesses through the use of leading questions. United States v. Bryant, 461 F.2d 912, 918-19 (6th Cir. 1972); McCormick on Evidence §§ 6, at 8-9 (1972). The drafters of Rule 611(c), however, determined that these limitations represented "an unduly narrow concept of those who may safely be regarded as hostile without further demonstration." Fed.R.Evid. 611(c) (Advisory Committee Notes). The new rule was thus designed to enlarge the categories of witnesses automatically regarded as adverse, and therefore subject to interrogation by leading questions without further showing of actual hostility. Id.
 
 
 19
 We agree with plaintiffs that the district court should have permitted leading questions during plaintiffs' direct examinations of Officer Calandra and Sergeant Holub. These police officers were employees of defendant City of Chicago at all times during the litigation and were each present during portions of the incident which gave rise to this lawsuit. Moreover, the record indicates that both officers had worked closely with defendant Frank Kusar during the period of their employment. Officer Calandra and Sergeant Holub thus clearly qualified as "witness(es) identified with an adverse party" for purposes of Rule 611(c).
 
 
 20
 We do not believe, however, that this conclusion requires reversal of the judgment. In essence, Rule 611(c) codifies the traditional mode of dealing with leading questions. It acknowledges that they are generally undesirable on direct examination, that they are usually permissible on cross-examination, and that there are exceptions to both of these propositions.[6] Although not explicitly stated, the rule is consistent with what has long been the law-that in the use of leading questions "much must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing them." St. Clair v. United States, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936 (1894). Such a decision will not be reversed absent a clear showing of prejudice to the complaining party. Riverside Insurance Co. v. Smith, 628 F.2d 1002, 1009 (7th Cir. 1980); United States v. O'Brien, 618 F.2d 1234, 1242 (7th Cir. 1980).[7]
 
 
 21
 Plaintiffs here have made no such showing of prejudice. Indeed, the record indicates that counsel for plaintiffs examined both Officer Calandra and Sergeant Holub at length without the use of leading questions and that neither witness was evasive or antagonistic. Moreover, defendants called Sergeant Holub as their own witness, thus permitting plaintiffs to ask leading questions on cross-examination. Finally, and most importantly, nowhere in their briefs do plaintiffs indicate what additional testimony they would have elicited had they been permitted to employ leading questions in their direct examinations of Officer Calandra and Sergeant Holub. Under these circumstances, any harm to plaintiffs from the district court's ruling is purely speculative. See Perkins v. Volkswagen of America, Inc., 596 F.2d 681 (5th Cir. 1979). For these reasons, we cannot say that the trial court's refusal to permit the use of leading questions on direct examination constituted reversible error.
 
 
 22
 For the foregoing reasons, the judgment of the district court is
 
 
 23
 Affirmed.
 
 
 
 *
 Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, is sitting by designation
 
 
 [1]
 Plaintiffs' contention that they were not given adequate opportunity to object to the challenged instruction is without merit. The record clearly indicates that the trial judge invited objections from both parties after he charged the jury, but before the jury began its deliberations. Tr. at 502. Neither party offered any objections at that time
 
 
 [2]
 Federal Rule of Civil Procedure 46 provides:
 Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.
 
 
 [3]
 These instructions stated:
 An individual has a right to be free from unreasonable searches and seizures. That right encompasses the right to be free from warrantless entries into a person's private residence. An entry into the private residence of the plaintiff by a police officer without a warrant is unreasonable unless the police officer establishes by a preponderance of the evidence that he entered the private residence of the plaintiffs with probable cause and in good faith. (Tr. at 490-91).
 
 
 [4]
 On direct examination, the district judge sustained defendant's objections to the following two questions:
 Plaintiffs' Counsel: Now, those instances that we are talking about right there, a door that is a third to a halfway open, a call having been made from that house-in your training as a police officer those two instances are not sufficient probable cause to enter the threshold of that house, are they, sergeant?
 Plaintiffs' Counsel: Sergeant, based upon the information you had at that time that the door was a third to a halfway open, that there was no warrant you knew of, that someone had made a call from that house to see the complainant in that house-based upon your experience, were those facts alone sufficient for you to enter the threshold? (Tr. at 93)
 On redirect examination, the following exchange took place:
 Plaintiffs' Counsel: When you entered the house, you say you entered the house with the intention of finding the person who placed the call, is that right?
 Officer Kusar: Yes, sir.
 Plaintiffs' Counsel: As you understand your rights as a police officer, do you have the right to enter that house?
 Officer Kusar: Under those circumstances, yes, sir. (Tr. at 175).
 
 
 [5]
 One of plaintiffs' witnesses testified that the day in question was "a very warm summer day .... It was very hot." Tr. at 30-31 (direct examination of Cynthia Mounts). Another witness testified that the temperature on that day "was like 85 or 90 degrees." Tr. at 313 (direct examination of Barbara Ellis). In addition, both defendant Kusar and Officer Calandra indicated, on direct examination by counsel for plaintiffs, that September 10, 1978 was a warm, sunny summer day. Tr. at 72,247. This testimony was not disputed by any of defendants' witnesses
 
 
 [6]
 Rule 611(c) provides:
 Leading question should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.
 
 
 [7]
 See also 3 Weinstein's Evidence 611(05), at 611-56-57 (1980)