59 F.3d 637
 TOLEDO PEORIA AND WESTERN RAILWAY and William H. McGee &
Company, Inc., as subrogee of Toledo Peoria &
Western Railway, Plaintiffs-Appellants,
v.
METRO WASTE SYSTEMS, INCORPORATED and Rick A. Wise,
Defendants-Appellees.
 No. 94-3259.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 17, 1995.
Decided June 30, 1995.
 
 Robert J. Kopka (argued), Mark L. Dolin, Landau, Omahana & Kopka, Chicago, IL, for Toledo Peoria and Western Ry., William H. McGee & Co., Inc.
 Scott R. Paulsen, John P. Fleming (argued), Quinn, Johnston, Henderson & Pretorius, Peoria, IL, for Metro Waste Systems, Inc., Rick A. Wise.
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 The plaintiff, Toledo Peoria & Western Railway (actually their insurance company as subrogee, but for simplicity's sake we shall refer to it as "Toledo"), brought this negligence action in diversity against Metro Waste Systems, Inc. In its complaint, Toledo sought to recover damages sustained by four of its locomotive engines which were derailed when they were struck by one of Metro's dump trucks which crossed the railroad tracks in disregard of the warning signals. Toledo primarily sought to recover the costs of repairing three out of the four damaged engines. As to the fourth engine, however, Toledo sought at trial to introduce evidence on both its replacement value and $94,000 in costs of attempted repairs which in hindsight turned out to be unsuccessful. The district court sustained Metro's objection to the evidence of attempted repairs on the basis that, under Illinois law, Toledo could obtain recovery for either the replacement value of the locomotive engine (in this case $130,000 minus $18,000 scrap value for a total of $112,000), or the reasonable costs of its repairs not to exceed the cost of replacement, but not both. The matter went to the jury, which returned a verdict in favor of Toledo, but awarded it damages which did not include the $94,000 in attempted repair costs, the evidence of which had been excluded as a result of the district court's ruling. On appeal, Toledo argues that given the particular facts of this case the district court should not have prevented it from presenting evidence of its costs of attempted repairs. We agree and therefore reverse the jury's damages award and remand to the district court for a new trial on damages.
 
 I.
 
 2
 The facts necessary to the resolution of this appeal come from Toledo's offer of proof before the district court. In its offer of proof, Toledo presented the testimony of its vice president and chief financial officer, Kenneth Furst. Mr. Furst testified that after the collision, in consultation with Toledo's insurance adjusters, the company decided that the most cost-effective course of action was to have the locomotive engines repaired rather than replaced. Mr. Furst informed Metro's claims adjusters of the decision to repair the engines, to which Metro expressed no objection. The engines were shipped to a Texas locomotive mechanic for repair. Three of the engines were successfully repaired for less than the cost of replacement and returned to Illinois. Before repairs were completed on the fourth engine, however, the repair shop went into bankruptcy. In order to retrieve its fourth engine, Mr. Furst testified that the company had to pay the bankruptcy trustee $74,000, which represented the amount of partial repairs performed to date. After retrieving its engine, Toledo contacted a second locomotive repair shop, National Railway Company, to obtain an estimate on how much it would cost to complete the repairs on the fourth engine. National Railway sent one of its appraisers to Illinois where he conducted an inspection and informed Toledo that it would cost approximately $40,000 to complete the repairs. Having already invested $74,000 in attempted repairs to date, and having determined that the replacement cost of the engine prior to the accident was approximately $130,000, Toledo decided that it would still come out $16,000 ahead if it completed the repairs, and therefore shipped the engine to National Railway to finish the job.
 
 
 3
 After receiving the engine, mechanics at National Railway incurred $20,000 to strip down the engine only to discover that the damages were far more extensive than originally anticipated based on the on-site visual inspection. National Railway determined that the costs of repairs would be at least an additional $40,000, bringing their total repair bill costs to at least $60,000. National Railway contacted Toledo and informed it of this latest development; it went on to inform Toledo that even if it completed these repairs, it could offer no assurances that the engine would be fully functional. Faced with having already spent $94,000 in attempted repairs to date ($74,000 from the first shop + $20,000 to National Railway) and the possibility that the additional $40,000 in repairs (which would place the total cost of repairs over the value of the engine before the collision) would not get the job done, Mr. Furst testified that the company decided to scrap the engine and not complete repairs.
 
 
 4
 On cross-examination, counsel for Metro never elicited any testimony from Mr. Furst suggesting that Toledo acted unreasonably at any point along the continuum of its attempts to repair the fourth engine. Rather, counsel's sole argument in support of excluding the evidence of attempted repairs was that as a matter of Illinois law, a plaintiff could not recover both the diminished value of its engine and the costs of attempted but unsuccessful repairs. Metro's counsel maintained that it had to be one or other, with the engine's replacement value as a ceiling on the recovery of costs of repairs should Toledo elect that remedy.
 
 
 5
 The district court agreed with Metro and ruled that Toledo would not be able to present to the jury any evidence of its attempted costs of repairs. Although the court recognized that a plaintiff has a general duty to mitigate damages, and remarked that it appeared that Toledo had done just that in its attempts to repair the fourth engine, the court nevertheless believed it was bound under Illinois law to limit Toledo's claim for damages to the replacement value of its engine and therefore excluded Toledo's evidence of attempted repairs.
 
 
 6
 The jury returned a verdict in Toledo's favor and awarded it damages of $513,546.95, none of which included Toledo's $94,000 in attempted repairs, for that evidence had been excluded. Following post-trial motions, Toledo filed this appeal in which it challenges the district court's ruling prohibiting it from presenting evidence of its attempted repairs.[1]II.
 
 
 7
 The district court's evidentiary rulings are entitled to great deference and will not be disturbed unless they constitute a clear abuse of discretion. However, "where the district court's decision to exclude or admit evidence is based solely on the resolution of a legal issue, not subject to the district judge's discretion, then our standard of review is not abuse of discretion, but rather is de novo." Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1266 (7th Cir.1988) (quotations and citations omitted). Moreover, even if the district court did err in its ruling, this alone will not constitute grounds for a reversal unless the complaining party can demonstrate that the erroneous ruling affected his substantial rights. Fed.R.Civ.P. 61; Nachtsheim, 847 F.2d at 1266; Ellis v. City of Chicago, 667 F.2d 606, 611 (7th Cir.1981). Both tests are met here.
 
 
 8
 In refusing to allow Toledo to introduce evidence of its attempted repairs, the district court relied upon the rule in Illinois that the usual measure of damages to personal property is the reasonable cost of repairs, with the replacement value as a ceiling to the amount of damages which can be recovered. See, e.g., Wall v. Amoco Oil Co., 92 Ill.App.3d 921, 48 Ill.Dec. 432, 435, 416 N.E.2d 705, 708 (1981); Santiemmo v. Days Transfer, Inc., 9 Ill.App.2d 487, 133 N.E.2d 539, 547 (1956). Using this as its guide, the district court reasoned that since the ultimate cost of repairing the fourth engine exceeded its replacement value, Toledo's damages would be limited to that amount. Therefore it could not recover an additional amount for the costs of its attempted repairs.
 
 
 9
 While the district court correctly stated the basic formula used in Illinois to calculate recovery for damages to personal property, its strict application of that formula to the facts of this case bypassed another well-established rule of damages in Illinois, the doctrine of mitigation. It has long been the law in Illinois that an injured party has an obligation to take reasonable steps to minimize his damages and thus avoid heaping up additional losses for which the tortfeasor may be held liable. Cedar Rapids & I.C. Ry. & Light Co. v. Sprague Elec. Co., 280 Ill. 386, 117 N.E. 461, 463 (1917); Culligan Rock River Water Cond. Co. v. Gearhart, 111 Ill.App.3d 254, 66 Ill.Dec. 902, 905, 443 N.E.2d 1065, 1068 (1982) (collecting cases); see also Oddi v. Ayco Corp., 947 F.2d 257, 264 (7th Cir.1991) (observing that under Illinois law a plaintiff has a duty to mitigate damages). In exchange, the injured party is entitled to recover from the tortfeasor all reasonable expenses incurred to minimize the loss. See Cedar Rapids, 117 N.E. at 463. In the event he fails to take reasonable steps to avoid additional harm, he bears the risk of any increased damages which could have been avoided. Cedar Rapids, 117 N.E. at 463.
 
 
 10
 Here Toledo took what it believed were "reasonable" steps to repair the damaged property, only to discover through hindsight that repairs would be unsuccessful. As it turned out it would have been more economical to have scrapped the damaged property at the outset rather than to have attempted repairing it. Under these circumstances, may the injured party recover both the costs of attempted but unsuccessful repairs and the diminished value of the property, even though this actually increases the cost to the tortfeasor? No Illinois decision since Cedar Rapids has said so expressly. Nevertheless, we think such a result would follow as a valid corollary of the well-established rule that an injured party has a duty to mitigate. See also 1 Dobbs, Law of Remedies Sec. 3.9 at 380, 383 (1993) (remarking that such a rule would be nothing more than "the affirmative side of avoidable consequences"); 22 Am.Jur.2d, Damages Sec. 495 at 579 (2d ed. 1988) ("The doctrine of avoidable consequences has a necessary corollary--the person who reasonably attempts to minimize his damages can recover expenses incurred"). This position was reflected by the Appeals Court of Massachusetts in Automated Donut Systems v. Consol. Rail Corp., 12 Mass.App.Ct. 326, 424 N.E.2d 265 (1981), the only decision we (and apparently either party) could locate addressing this very issue. That court held that an injured party who takes reasonable steps to repair what turns out to be irreparably damaged property should not be barred from recovering both the cost of attempted repairs and the difference in value of the property before and after the loss. Id. at 270-71. The reason given by the court was that such a rule would "reflect[ ] the policy ... of encouraging the injured party to make reasonable efforts to avoid loss by protecting him even when his efforts fail...." Id. (citing, among other things, the Restatement (Second) of Torts Secs. 919, Comment c & 928(a), Comment a (1979)). We believe that the Illinois Supreme Court would follow this approach as a logical extension of its statements in Cedar Rapids. Therefore we conclude that the Illinois Supreme Court would not prohibit Toledo from recovering as additional damages the costs it incurred in a good faith, reasonable attempt to mitigate its damages, even if such attempts were unsuccessful and exceeded the savings. Any other result would effectively penalize Toledo for fulfilling its obligation under Illinois law to minimize its damages.
 
 
 11
 Nor would this rule conflict with the basic measure of damages as enunciated by the district court, for the two rules are complementary. The cost of repairs is the usual rule for measuring damages to personal property. Where appropriate, that calculation must include the expenses incurred by the plaintiff in satisfying his duty to mitigate. For example, where the plaintiff could avoid a total loss of the damaged property by repairing it, the mitigation doctrine requires that he take reasonable steps to do so; in return he would be allowed to recover the costs of those repairs up to the fair market value of the property. On the other hand, if at the outset the injured party reasonably determines that it is more economical to replace the property than repair it, then replacement would be consistent with the duty to mitigate.
 
 
 12
 This correlation between the usual measure of damages and the duty to mitigate has been observed by at least one Illinois appellate court. See Fairchild v. Keene, 93 Ill.App.3d 23, 48 Ill.Dec. 475, 476, 477, 416 N.E.2d 748, 749, 750 (1981). What's more, Fairchild upheld an award of damages that exceeded the replacement value of the plaintiff's property under circumstances similar to our own: the plaintiff made an initial good-faith determination that repair was the most economical alternative to take, and only in hindsight, after substantial repairs had been incurred, did he discover that the damage was far greater than anticipated and that it would have been more economical to replace rather than repair the damaged property. See id. at 477, 416 N.E.2d at 750. Under these circumstances the court concluded that it would be "illogical" to limit the plaintiffs to the diminished value of the damaged property. See id. Given the result in Fairchild, coupled with Illinois' mitigation doctrine, we conclude that the district court's exclusion of Toledo's evidence was inconsistent with Illinois law. This ruling certainly affected Toledo's substantial rights and therefore constitutes grounds for reversal.
 
 
 13
 The only issue remaining is whether Toledo is entitled to judgment in its favor for the costs of its attempted repairs or whether it would be preferable to remand to the district court for a new trial on damages. We conclude remand is the better procedure. To order judgment in favor of Toledo would require a conclusion that it acted reasonably each step of the way in its decision to repair and later to abandon repairs. But a determination of reasonableness is a factual one to be decided by the jury. The fact that Metro did not put forth any evidence of unreasonableness during Toledo's offer of proof is not sufficient to conclude that remand on this issue is unnecessary. Metro's sole objection before the district court, which was sustained by that court, was that Toledo was prohibited from presenting this evidence as a matter of Illinois law. Given our rejection of that conclusion, Metro will now have the opportunity to present evidence of Toledo's unreasonableness if it wishes to avoid paying an additional amount for Toledo's unsuccessful repairs.
 
 III.
 
 14
 The district court's decision to exclude Toledo's evidence of attempted but unsuccessful repairs was inconsistent with Illinois law requiring injured plaintiffs to mitigate damages. Because this ruling affected Toledo's substantial rights, we REVERSE the judgment and REMAND for a new trial on damages.
 
 
 
 [1]
 Although Toledo did not challenge the district court's exclusion of evidence in a motion for new trial, such a motion is not a prerequisite to an appeal on that issue. See Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1349-50 n. 24 (7th Cir.1983)