**HEALD v. MILBURN (two cases).**
Nos. 7651, 7652.

Circuit Court of Appeals, Seventh Circuit.
Jan. 13, 1942.

SPARKS, Circuit Judge.

Appellant appeals from judgments rendered in favor of the plaintiffs in suits to recover for personal injuries sustained in an automobile collision. The complaints were in two counts, the first charging negligence as to speed, failure to keep a proper lookout, operating a car on the wrong side of the road, and operating a car in an unsafe condition in that one wheel was so insecurely attached thereto that it became detached from the car. The second count alleged willful and wanton misconduct in the operation of the car in the same respects. The jury rendered a general verdict of guilty and assessed damages in favor of appellee, Mrs. Heald, at $9,000, and appellee Mr. Heald, at $1,000. Appellant assigns as error the alleged improper remarks of counsel to the jury, rulings on evidence, instructions, and failure to grant motions for a directed verdict and a new trial.

The accident occurred about 2:15 o'clock in the afternoon of July 1, 1940, as appellee, William Heald was driving his car east on Route 330 a few miles west of Geneva, Illinois. The road at this point is a two-lane concrete highway, eighteen feet wide, with a black line marking the center. Appellant was driving west on the same highway, operating a 1934 Chevrolet sedan which had been acquired a week or ten days before in a trade by the used car firm of which he was a partner. As his car approached appellee's, and at a point estimated by the latter to be about seventy-five or eighty feet away, appellant's car suddenly veered from the north lane across the center line into the lane in which appellee was driving east. The cars crashed, damaging appellee's beyond repair. Appellant's was also badly damaged, and after the accident it was found that the left rear wheel had become detached and rolled over into a field from which it was subsequently recovered at a place about one hundred feet north of the highway, with the tire still inflated.

Both appellees were injured, Mrs. Heald very seriously. Although there was some conflict in the evidence as to the extent of these injuries, we cannot say that there was not substantial evidence to support the finding of the jury as to the amount of the damages. There is no suggestion of any contributory negligence on the part of Mr. Heald. Appellant contends, however, that neither is there any substantial evidence of any negligence on his part, to say nothing of

Barnabas F. Sears and Edward F. Streit, both of Aurora, Ill., for appellant.

Joseph D. Ryan, Edmund M. Sinnott, and Louis P. Miller, all of Chicago, Ill., for appellees.

Before SPARKS and MINTON, Circuit Judges, and BARNES, District Judge.

negligence to support a charge of willful and wanton misconduct.

To sustain their charge of negligence and misconduct, in addition to the evidence that appellant's car crossed the center line and was traveling in the wrong lane when the accident occurred, appellees introduced the evidence of many witnesses that immediately after the accident they observed that appellant was in an intoxicated condition. Heald and another witness testified that he refused to give Heald his name and address, and cursed when he was requested to do so. They also stated that he handed Heald his wallet containing some papers, stating that he could pay for any damages from it. One witness testified that after getting out and looking at the car from which one wheel had been detached, he climbed back in and started the engine, racing it "sky high," and saying, "Sure, I can get out."

Appellant sought to show that his condition was the result of the shock of the collision. However, a physician who examined him after the accident said that his injuries were slight—a slight cut on his forehead and perhaps some broken ribs, although he refused to have X-rays taken so that could not be determined. He too testified to appellant's intoxication, and said that appellant admitted that he had had too many drinks. Testimony to the same effect was given by police officers in the jail to which he was taken after the accident. Appellant denied that he was intoxicated at the time of the accident although he did say that he had had two drinks of whiskey about 10:30 or 11:00 in the morning before it occurred. Another witness testified that he stated shortly after the accident that he had had seven drinks and that that was too much.

Appellant stated that he had left his home early for the purpose of visiting used car dealers to look for cars to buy. While he was in LaGrange, Illinois, he stopped at a garage to ask a mechanic to investigate the cause of a creak in the rear end of the car he was driving. He stated that he drove the car backward and forward, and that the mechanic then took off the hubcap and tightened the nuts on the wheel to hold the wheel on. He said that he started to use the wrench himself and did tighten one nut but the mechanic offered to do it for him. He knew that one nut was loose, and could see the condition of the wheel. He watched the mechanic tighten all the nuts on the wheel. The mechanic corroborated his testimony as to the repair. After this stop he drove on to a lunch counter for lunch and then visited another used car yard. He then started on to call on a customer, driving along Route 330 at a speed estimated by him at one part of his testimony at thirty-five to forty miles an hour, because, "I wouldn't drive any '34 more than thirty-five or forty." At another point he stated that he was going approximately forty or forty-five miles an hour at the time of the accident. There was no other evidence as to his speed.

Mr. Heald stated that until appellant reached the point where he saw appellant's car suddenly veer across the center line and into the opposite lane of traffic, there appeared to be nothing unusual about appellant's driving. To this extent they agree on the facts. They differ, however, as to what happened as the car swerved. Mr. Heald stated that he did not see the wheel become detached although he was watching the car and would have seen it if a wheel had been missing. Appellant testified that the first thing that attracted his attention was the sudden dropping of the car which he thought must have occurred before the cars came together, although he could not say definitely that that was what happened.

There was no evidence as to any marks on the pavement which would indicate that the wheel had become detached and let the car down. The only evidence as to markings on the highway related to the skid marks apparently made by appellee's car when he tried to stop it.

A mechanic who examined the wheel after the car was towed to a garage after the accident testified that the holes in it through which bolts were inserted to hold it in place had become enlarged so that the wheel had slipped over the nuts, and that the nuts were then still attached to the bolts that led into the brake drum.

■ During the trial, appellant objected to the introduction of evidence that he was arrested and taken to jail after the accident, and to all evidence relating to criminal prosecution, and he here urges that the court erred in admitting such evidence. We agree with appellees that they were entitled to introduce the evidence of a police officer, a deputy sheriff, and a physician, all of whom examined or talked with him in jail, and testified as to his intoxication, and that they were also entitled to show where, when, how, and under what circumstances they had obtained their knowledge of his

condition. After the deputy sheriff had testified as to his conversation with appellant in jail, on cross-examination, appellant inquired as to whether or not he had ever testified at any other time or place as to his condition, thereby opening up the question of the criminal prosecution. Thereafter appellant himself brought in the record of the proceeding, and it was shown that it had been nolle prossed. We find no error as to the introduction or use of the evidence as to appellant's intoxication or prosecution.

Appellant also objected to what he called prejudicial misconduct of counsel for appellees in his argument to the jury. The argument to which he objected characterized appellant's defense as "dishonest, miserable, unfair and untrue." Elsewhere counsel said, over the objection of counsel for appellant to the inflammatory remarks in front of the jury, "This whole defense, I say, is a lie, and it makes one's blood boil to have to sit here and listen to it," and "I say that a lie won't fit into anything but another lie, and that is why you can't get away with a lie. * * *" While we do not recommend such argument to the jury, nevertheless we cannot say that it constitutes reversible error. It is, of course, only counsel's own interpretation of the evidence and it remains for the jury to draw its own conclusions as to the correctness of that interpretation. There was no misquotation of the evidence, and we are convinced that a jury was not likely to be misled by such language.

Appellant contends that the verdict is contrary to the evidence, particularly on the issue of negligence. He quotes from the case of Illinois Central v. Oswald, 338 Ill. 270, 170 N.E. 247, 249: "There are three essential elements in actionable negligence: First, a duty imposed by law to exercise care in favor of the person for whose benefit the duty is imposed; second, the failure to perform that duty; and, third, a consequent injury so connected with the failure to perform the duty that the failure is the proximate cause of the injury. * * * The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which might result from his act." With this statement we are in complete accord.

However, we fail to find in it any authority for reversing the judgments here under review.

There can be no doubt but that appellant owed a duty of care to operate his automobile in such a manner as not to injure appellees or any other persons who might be injured by his failure to perform such duty. Under the facts here presented we are convinced that the jury was fully warranted in finding that he failed to perform that duty, and that such failure was the proximate cause of injury to appellees. Whatever the cause of the car's veering across the center line into the lane of opposing traffic, the fact remains that it did so veer, and that it collided with the automobile of appellees when that automobile was being operated without any negligence. There was substantial evidence that immediately thereafter appellant was in such an intoxicated condition as to be unable to talk or act intelligently. Even though he did introduce evidence that he had driven many miles between the time he imbibed the drinks (which varied in number according to the testimony from two to seven) and the accident, the jury was warranted in finding that the drinks caused him to lose control of his car and swerve over into that of appellees. While intoxication in and of itself does not constitute negligence, nevertheless it is a material element in the issue of negligence.

Even on appellant's own theory as to the cause of the accident, we cannot say that there was no substantial evidence from which the jury could find that he was negligent. He contends that the sole cause of the accident was that the wheel became detached, causing the car to veer across the highway. On this theory, the jury might well have found that he was negligent in driving a 1934 Chevrolet which he had just bought a week or ten days before, and which according to his own testimony had been subjected to a very cursory and inadequate inspection. A mechanic employed by his firm testified that he gave it the customary inspection consisting of checking the "brakes and the nuts, the lights and horn and wiper and all that stuff." He said he had driven the car three or four miles and found it "the average 1934 Chevrolet." He also stated that his inspection had not extended to the wheels; that that would require removing them to examine whether or not the nuts were smaller than the holes they were supposed to seal, and that "by the

time you stop and do that to several hundred cars during the year it means a lot of time." Another witness called by appellant stated that the holes in the rim of the wheel or in the part that fastens it to the brake drum were worn and large, and that he could slide one of the nuts through any of the five or six holes in the wheel with his fingers, without the use of any force.

It must be remembered in connection with this testimony that the mechanic who testified in appellant's behalf said he took the hubcap off and tightened all the nuts on that wheel, and appellant himself said he tightened one of the nuts. The mechanic also stated that he had told appellant, "Possibly you have a loose wheel, we will get the wrench and try it." Appellant contends that all this evidence shows care rather than negligence, and that he had the car inspected and attended to whatever repairs were needed. However, we cannot say that the jury did not find from the evidence that appellant had actual knowledge of the unsafe condition of the car he was driving. It is not too much to infer from the fact that a few hours after the hubcap was removed and the nuts tightened, those nuts were smaller than the holes they were intended to seal, that the same condition prevailed at the time of the inspection and repair. If so, appellant either saw the condition or should have seen it. Hence we find in appellant's theory of the accident no conclusive defense to appellees' charge of negligence.

 Appellant further contends that the court erred in submitting to the jury the issue of willful and wanton misconduct inasmuch as there was no evidence upon which the jury could find him guilty on that count. The court submitted this issue with careful instructions as to the meaning of the terms:

"* * * it is an act committed under circumstances exhibiting a reckless disregard for the safety of others such as the failure to discover obvious and impending danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

"To constitute an act willful and wanton, as charged in the second count of the plaintiffs' complaint, and as used in these instructions, the person doing the act, or failing to act, must be conscious of his conduct and though having no intent to injure, must be conscious from his knowledge of surrounding circumstances and conditions that his conduct will naturally and probably result in injury. * * * Ill will is not a necessary element of a willful and wanton act. * * (It) may be defined as such a gross want of care and regard for the rights and safety of others as to indicate a willingness to inflict injury or to import consciousness that an injury may result from an act done, and a reckless disregard of the consequences of such act."

The court further instructed the jury as to the statute then in force providing that, "It is unlawful for any person to drive or move * * * on any highway any vehicle * * * which is in such unsafe condition as to endanger any person or property * * *." Ill.R.S. Ch. 95½, § 199. With respect to this the court instructed the jury that, "The operator of an automobile is not an insurer against damage done by his car while in motion on the highway but is only liable for negligence committed by him while operating said car. And in this case, if you believe from the evidence that one of the wheels of defendant's car was insecurely attached to said car and was in such unsafe condition as to endanger persons and property, and further believe from the evidence that such unsafe condition of defendant's car was the sole cause of the collision and injury to plaintiffs, if any, still the defendant would not be liable to the plaintiffs unless he knew or in the exercise of ordinary care should have known of such unsafe condition of said car."

With respect to the issue of intoxication, the court's instructions were that "even though you find from the evidence and under the instructions of the Court that at the time of the collision complained of the defendant was intoxicated and that such intoxication, if any, constituted negligence, still if you further find from the evidence that such intoxication of itself, if any, was not the proximate cause of said collision, then you will have no occasion to consider the question of intoxication, if any."

We think these instructions correctly stated the law with respect to the facts presented by this case, and that there was no error in submitting the issues of negligence and willful and wanton misconduct to the jury under them. The law of the road required appellant to keep to the right. His presence on the wrong side of the road created liability unless it was excusable or justifiable. The record before us presents no such excuse or justification as to war-

rant our reversing the judgments against appellant.

Judgments affirmed.