**Glenn DARENSBOURG and Marcelette Darensbourg on behalf of themselves and their minor children, Glenn and Joleen Darensbourg**

v.

**Sally DUFRENE d/b/a Little People's Nursery.**

**Civ. A. No. 77-901.**

United States District Court, E. D. Louisiana.

Nov. 21, 1978.

George M. Strickler, Jr., New Orleans, La., for plaintiffs.

Gordon Hackman, Boutte, La., for defendant.

## MEMORANDUM OPINION

COLLINS, District Judge.

Plaintiffs, Glenn and Marcelette Darensbourg, brought this action on behalf of themselves and their minor children for violation of their civil rights under 42 U.S.C. § 1981. It is alleged that defendant, Sally Dufrene, refused to allow the Darensbourg's children admission to the Little People's Nursery because of their race. Sally Dufrene is the owner and operator of the Little People's Nursery, a commercial day care center in Paradis, Louisiana. Plaintiffs at the time of the filing of the suit asked for injunctive relief, damages and attorney's fees. However, before the issuance of any injunction, the children were admitted to the nursery; therefore, injunctive relief is no longer at issue. The issues presently before the Court are whether or not the plaintiffs should recover damages and attorney's fees. Jurisdiction is proper under 28 U.S.C. § 1343(4)[1] since this is an action to recover damages for violation of an Act of Congress which provides for protection of Civil Rights.

## FACTS

On February 2, 1977 Marcelette Darensbourg sought to enroll her two youngest children in the Little People's Nursery. The Darensbourg family is black. Mrs. Darensbourg called the nursery to inquire about enrollment for her twenty-two month

---

1. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   .   .   .   .   .

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

old twins and was told by an employee of the nursery that openings existed and to come by and register the children. She went to the nursery that day, filled out printed admission forms, agreed to the quoted price ($9.00 per day) and left with the understanding that the children would start the next day.

That same evening, the owner and operator of the nursery, Mrs. Sally Dufrene, called Mrs. Darensbourg and told her that the children could not attend the nursery because they were black. Mrs. Dufrene said that she had admitted a black child at an earlier date and had encountered opposition from her white clientele. Because of this earlier reaction, and probably to appease Mrs. Darensbourg, Mrs. Dufrene said that she would poll the white parents to determine if they would accept a black child in the nursery. Mrs. Dufrene testified at trial that she feared the loss of her white clientele if black children were admitted; therefore, she thought the best way to handle the situation would be through a vote of the white parents.

About two weeks later, Mrs. Darensbourg called Mrs. Dufrene to inquire about the outcome of the vote. This conversation was taped by Mrs. Darensbourg and was played in open court at the trial of this matter. The substance of the conversation was that the white parents who were polled unanimously voted against the admission of a black child. For this reason, Mrs. Dufrene stated that she would not allow the Darensbourgs' children to attend the nursery.[2] Listening to the tape leaves one with no doubt that the children were denied admission on account of their race.

Subsequently, Mrs. Darensbourg complained to the news media, the F.B.I. and numerous friends and relatives about the incident. Testimony adduced at trial showed that both Mr. and Mrs. Darensbourg, but especially Mrs. Darensbourg, suffered emotional distress and humiliation from this act of discrimination.

Plaintiffs filed suit on March 23, 1977 and moved for a preliminary injunction on April 4, 1977. After several conversations and exchanges of letters between the parties and the Court, the children were admitted to the Little People's Nursery under the threat of a temporary restraining order. The children attended the nursery intermittently for a period of five weeks and then were withdrawn.

## COMPENSATORY DAMAGES

■ 42 U.S.C. § 1981 guarantees all persons the equal right to make and enforce contracts and to enjoy the equal benefit of all laws.[3] Thus, § 1981 reaches private discrimination in that it prohibits racial discrimination in the making and enforcement of private contracts. The case of *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), controls the present situation. In *Runyon* the Supreme Court found a violation of § 1981 in the practice of two private schools in denying admission to students on account of race. Since the two schools offered their services to members of the general public, yet did not offer their services on an equal basis to non-white students, the Supreme Court held that § 1981 had been violated and allowed compensatory damages.

The present case presents a similar situation. The defendant offered the services of her nursery to members of the general public, but decided which members of the public she would admit based on racial considerations. The evidence at trial clearly showed this to be the situation although the defendant sought to explain her discrimination by showing that it was caused by a

---

**2.** The tape also revealed that, after some prodding by Mrs. Darensbourg, Mrs. Dufrene admitted that only about one half of her clients were asked to vote.

**3.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

vote of her clientele. Under this theory the nursery would be, in effect, a private club whose present members select new members based on any criteria that they wish. Obviously, this is not the status of the Little People's Nursery since it holds itself out as open for business with members of the general public. No further discussion is warranted on this issue.

Counsel for the defendant has also sought to prove that (1) the damages suffered by the plaintiffs only occurred between March 25, 1977, the date the defendant was served with the law suit, and April 11 or 12, the date the defendant claims that the plaintiffs were notified that their children would be admitted; and that (2) the plaintiffs did nothing to minimize their damages. There is no merit in either of these contentions because the plaintiffs are being compensated for their emotional distress and humiliation and not for their childrens' missed opportunity of attending the nursery. *See, e. g., Davis v. Village Park II Realty Company,* 578 F.2d 461 (2nd Cir. 1978); *Rivera Morales v. Benitez de Rexach,* 541 F.2d 882 (1st Cir. 1976). This type damage is not capable of being confined within specified dates nor is it the type of damage that can be minimized in any way known to this Court. It is therefore the decision of the Court that the plaintiffs be compensated in the amount of $3000.00 for their emotional distress and humiliation.

## PUNITIVE DAMAGES

A person who establishes a cause of action under 42 U.S.C. § 1981 is entitled to compensatory damages and, under certain circumstances, punitive damages. *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir. 1977); *Claiborne v. Illinois Central Rail-*

*road,* 401 F.Supp. 1022 (E.D.La.1975). The rule in civil rights cases for recovery of punitive damages is that the defendant must have exhibited oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff. *Guzman v. Western State Bank of Devils Lake,* 540 F.2d 948 (8th Cir. 1976) (decided under 42 U.S.C. § 1983); *Bishop v. Pecsok,* 431 F.Supp. 34 (N.D.Ohio 1976) (decided under Civil Rights Act of 1968); *Mitchell v. Chester County Farms Prison,* 426 F.Supp. 271 (E.D.Penn. 1976) (decided under 42 U.S.C. § 1983). The facts of this case as outlined above do not support an award of punitive damages. Despite the seriousness of defendant's conduct, the Court does not find any malice or wanton behavior necessary for such an award.

## ATTORNEY'S FEES

A prevailing party in an action under 42 U.S.C. § 1981 can, in the discretion of the Court, recover reasonable attorney's fees. 42 U.S.C. § 1988.[4] Counsel for plaintiffs and counsel for defendant should submit to the Court within 20 days a Memorandum on what amount the award should be in the present case. The Court intends to award attorney's fees and will follow the guidelines set out by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

---

4. [I]n any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980 and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986], title IX of Public Law 92–318 [20 U.S.C. § 168 et seq.], or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.