Palmer RAMSEY, Sr.,
Plaintiff-Appellee,

v.

AMERICAN AIR FILTER CO., INC.,
Defendant-Appellant.

No. 84–2803.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1985.

Decided Aug. 30, 1985.

---

Walter D. Braud, Braud, Warner, Neppl & Westensee, Ltd., Rock Island, Ill., for plaintiff-appellee.

Thomas G. Abram, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellant.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Plaintiff-appellee, Palmer Ramsey, brought suit against his former employer, American Air Filter Co., Inc., alleging that it discriminated against him on the basis of race in violation of 42 U.S.C. § 1981. Specifically, plaintiff charged that defendant discriminated against him by treating him differently from other, nonminority employees by denying him certain transfer opportunities, by subjecting him to improper lay-off procedures, and by subjecting him to racial harassment. After a jury trial, the jury returned a verdict in plaintiff's favor, assessing compensatory and punitive damages in the following amounts: $50,000.00 compensatory damages for lost wages and benefits, $75,000.00 compensatory damages for mental distress, and $150,000.00 punitive damages. The trial court ordered a remittitur, which plaintiff accepted, reducing the $50,000.00 award

for lost wages to $37,486.00. On appeal, defendant challenges both the jury's finding of liability and the amount of damages awarded.

I. The Facts and Proceedings Below

Plaintiff began his employment with defendant in 1967 in its Environmental Control Division plant in Moline, Illinois, and, with various exceptions, continued to work for defendant until August 8, 1982, the date of his final lay-off. His seniority rights expired on February 1, 1984. For the most part, during his tenure with defendant, plaintiff worked on and around a paint conveyor line. Until November 1971, plaintiff worked as an Insulmat operator, a position off the conveyor line that involved spraying insulating material on air conditioning and heating components. Due to health complications, plaintiff bid off the Insulmat operator position and received the job of paint conveyorman, a position on the conveyor line that involved placing and removing sheet metal components on the line. In addition to conveyorman, two other classifications worked on the line: spray painter and titrator. The titrator position involved mixing paints and overseeing the dipping process. Plaintiff remained a paint conveyorman until his last lay-off in 1982.

On April 23, 1982, plaintiff filed a complaint against defendant, alleging that it discriminated against him on the basis of race in violation of 42 U.S.C. § 1981 by subjecting him to terms and conditions of employment different from those that applied to nonminority employees. In particular, plaintiff claimed that he suffered the following acts of discrimination:

1) in November 1978, despite plaintiff's request to fill a temporary opening in the titrator job, defendant filled the position with an employee who possessed less seniority than plaintiff;

2) in March 1980, defendant discriminated against plaintiff in the selection of a permanent replacement for the position of titrator;

3) in September 1980, defendant subjected plaintiff to improper lay-off procedures in conjunction with a September 8, 1980, lay-off of the entire second shift paint line;

4) during the last four or five years of plaintiff's tenure, defendant enforced disciplinary measures against plaintiff in a discriminatory manner; and,

5) during the last four or five years of plaintiff's tenure, defendant subjected plaintiff to racial harassment by yelling at him more frequently than nonminority employees and by addressing him by racial slurs.

After a five-day trial, the jury returned a verdict in plaintiff's favor. On the special verdict form, the jury answered "yes" to the questions, first, whether defendant intentionally subjected plaintiff to different terms and conditions of employment because of his race and, second, whether defendant's conduct was malicious, wanton, or oppressive. The jury awarded $125,000.00 in compensatory damages, $50,000.00 for lost wages and $75,000.00 for mental distress, and punitive damages in the amount of $150,000.00. Defendant then moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied defendant's motions with respect to the verdict and awards pertaining to mental distress and to punitive damages, but it granted defendant's motion for a new trial with respect to the verdict and award pertaining to lost wages and benefits unless plaintiff accepted a remittitur of $12,514.00. Plaintiff consented to the remittitur, reducing the lost wages award to $37,486.00.

Defendant raises three issues on appeal. First, defendant claims that the district court erred in denying defendant's motion for judgment notwithstanding the verdict. Second, defendant argues that the district court erred in denying defendant's motion for a new trial. Specifically, defendant contends that a new trial is warranted because the previous trial was marred by the court's admission of certain prejudicial evidence, by certain prejudicial comments made by plaintiff's counsel during closing argument, and by the court's failure to give proper instructions to the jury. Third,

defendant challenges as grossly excessive the jury's award of compensatory damages for mental distress and its award of punitive damages.

## II. Judgment Notwithstanding the Verdict

■■■ According to defendant, the district court erred by denying defendant's motion for judgment notwithstanding the verdict because the jury's verdict was not supported by substantial evidence. As this court recently stated, "[t]he standard for determining whether a judgment notwithstanding the verdict should be granted is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985). In reviewing a district court's denial of judgment notwithstanding the verdict, the reviewing court must review the record to ensure that more than a mere scintilla of evidence supports the verdict. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984). The court, in reviewing the record, must resolve all conflicts in the evidence in favor of the prevailing party and may not judge the credibility of the witnesses. *Id.* For this reason, the court rarely will conclude that a district court improperly refused to enter judgment notwithstanding the verdict. *McKinley v. Trattles*, 732 F.2d 1320, 1323–24 (7th Cir.1984); *Clemons v. Mitsui O.S.K. Lines, Ltd.*, 596 F.2d 746, 748 (7th Cir.1979), *cert. denied*, 451 U.S. 969, 101 S.Ct. 2044, 68 L.Ed.2d 347 (1981).

■■■ Although plaintiff brought this suit under 42 U.S.C. § 1981, rather than under Title VII, this court has acknowledged that the same standards that govern Title VII liability also govern section 1981 liability. *See Mason v. Continental Illinois National Bank*, 704 F.2d 361, 364 (7th Cir.1983); *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1281 n. 3 (7th Cir.1977). According to the Supreme Court, in a Title VII suit, a plaintiff must make out a prima facie case of discrimination, which, if he or she is successful, defendant must meet by articulating a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Plaintiff then may rebut defendant's reason by proving that the alleged legitimate reason was simply a pretext designed to hide the discrimination. *Id.* at 804, 93 S.Ct. at 1825. With respect to the first element that a plaintiff must prove in a Title VII case, this court explained in a recent decision that the plaintiff can establish a prima facie case of discrimination by demonstrating that he or she is a member of a protected class, that he or she is otherwise similarly situated to members of the unprotected class, and that he or she was treated differently from the members of the unprotected class. *Coates v. Johnson & Johnson*, 756 F.2d 524, 531 (7th Cir.1985). The factual showing that a plaintiff must make to establish a prima facie case will vary depending upon the type of employment practice or decision challenged. *Id.*

■■■ In this case, the first incident of alleged discrimination occurred when, in November 1978, defendant selected an employee with less seniority than plaintiff to fill a three-month opening in the titrator position. At that time, the regular titrator on the second shift was absent from work due to illness and no other employees in the titrator classification were available to fill his position. Both sides agree that defendant has discretion regarding decisions about temporary assignments, but that defendant should consider an employee's seniority and ability when exercising that discretion. Also, according to the collective bargaining agreement then in effect between defendant and the union, defendant may not discriminate against any employee when making temporary assignment decisions.

According to plaintiff's testimony, when he learned that the regular titrator would be absent for a few months, he asked his foreman, Dave Miles, if he could be transferred into the titrator position. Despite

his request, defendant awarded the position to T. Glen McDaniel, a white employee who possessed less seniority than plaintiff. Defendant's witnesses testified that McDaniel was selected rather than plaintiff because McDaniel, unlike plaintiff, was qualified as a spray painter, and the position of titrator required spray painting ability. To rebut defendant's position, plaintiff first sought to establish that the employee who assumed the position of titrator did not necessarily have to perform spray painting work. Both sides agree that the titrator's normal duties do not encompass spray painting responsibilities. Rather, defendant contends, the employee who assumes the position of titrator also must assume the position of "lead man" on the line. The lead man must, in addition to other duties, relieve spray painters when they take breaks. Plaintiff's evidence, however, established that, although the titrator had customarily served as "lead man" on the second shift paint line, no requirement existed that the titrator also act as lead man. In fact, the two jobs carried separate compensation.

In addition, plaintiff sought to establish that, even if company policy dictated that the titrator act as lead man, McDaniel possessed no greater qualifications than he for the position of titrator. Prior to November 1978, the month in which he received the titrator position, McDaniel worked as a lift truck operator, moving parts to and from the paint line. Defendant's witnesses testified that at about this time McDaniel became a spray painter and had that classification when he was transferred into the titrator position. To rebut this evidence, plaintiff testified that McDaniel was not a spray painter when he became titrator in 1978, and plaintiff introduced McDaniel's personnel record that indicated that McDaniel bid on the spray painting position on November 13, 1979. Defendant argued that this entry was a typographical error. Nonetheless, under the circumstances, the judge was entitled to resolve the conflicting evidence, and this court will not second-guess its resolution.

The second incident of alleged discrimination occurred when plaintiff was laid off in September 1980. Effective September 8, 1980, defendant "surplussed" the entire second shift paint line. Under the collective bargaining agreement, defendant was required to notify each affected employee at least three days before the lay-off became effective. Additionally, according to company policy, defendant was obligated to advise each employee of any options other than lay-off that were available to him or her.

According to plaintiff, defendant failed to inform him adequately of his bumping and bidding options. A number of defendant's witnesses testified that they had informed plaintiff of his rights, although none of them could remember when these meetings occurred. Plaintiff testified, contrary to defendant's witnesses, that he did not speak to any of these persons until Friday, the last day that he worked before the lay-off became effective. According to plaintiff, when he finally spoke to Buel Williamson, the plant manager, on Friday, Williamson failed to inform him of an opening in the customer service position. Defendant conceded that the customer service position, which defendant awarded to a white employee with lesser seniority than plaintiff, was to be awarded on the basis of seniority. Williamson told plaintiff at this meeting that, rather than go on lay-off, he might be able to run the "little dip line," a smaller and less complex conveyor line. Subsequently, however, Williamson informed plaintiff that the option of running the little dip line was not available to plaintiff because defendant was no longer operating the line on a regular basis. Arthur Freeze, one of defendant's former employees, testified that he observed the little dip line operating on a full-time basis for a few weeks during the period that plaintiff was on lay-off. Thus, whether defendant subjected plaintiff to improper procedures in connection with this lay-off again depends on credibility determinations that the jury was privileged to make.

The third incident of alleged discrimination involved defendant's manner of select-

ing an employee to fill an opening in the titrator's position that occurred in March 1982. Defendant awarded the position to Dale Sanders, an employee who possessed greater seniority and experience than plaintiff possessed. Nonetheless, plaintiff alleged that defendant discriminated against him in the selection process before defendant posted the position for bid. According to plaintiff, he inquired about the possibility of becoming a titrator when he learned that the regular titrator was planning to retire. Despite plaintiff's request, defendant never trained plaintiff for the titrator position. In contrast to this treatment, two white employees in the paint department testified that Dave Miles, the foreman, approached them and asked if they would like to be trained for the titrator position. In fact, one of the employees, Doug Aikens, testified that when Miles approached him about training for the titrator's position, Miles virtually guaranteed him the position. Both employees testified that they did receive training, although they were never awarded the position.

Arthur Freeze, the other employee who received training, testified that, after he began training, plaintiff approached Elvern Pribble, the general foreman, and asked him if he could bid on the titrator opening. Pribble responded that plaintiff could not bid for the position since he had not received any training. When plaintiff asked Pribble if he could be trained, Pribble told plaintiff that he would not train him. Plaintiff argued that when defendant learned of his intention to bid on the titrator position, defendant persuaded Sanders, a first shift employee, to bid for the position.

This court has previously stated that, when reviewing a denial of judgment notwithstanding the verdict, the court must not only construe the facts in favor of the prevailing party, but must also draw all reasonable inferences from those facts in favor of the prevailing party. *La Montagne*, 750 F.2d at 1410. The facts that plaintiff presented, along with the inferences that plaintiff suggests, support the jury's finding that defendant discriminated

against plaintiff by the manner in which defendant filled the 1982 opening in the titrator position.

In addition to the evidence discussed above, plaintiff introduced evidence to demonstrate that on various occasions defendant singled him out for discipline. Also, plaintiff's witnesses testified that, for no reason, Pribble yelled at plaintiff more than he yelled at white employees, that Pribble referred to plaintiff as "boy," that Pribble told Freeze not to write anymore "goddamn grievances" pertaining to plaintiff and to stay away from plaintiff, and that Williamson told the union steward, referring to plaintiff, "to leave that nigger alone." This evidence further convinces this court that the district court did not err in determining that a rational jury could have concluded that defendant discriminated against plaintiff. Accordingly, this court affirms the district court's denial of defendant's motion for judgment notwithstanding the verdict.

### III. Evidentiary Rulings, Closing Argument, and Jury Instructions

Defendant challenges the district court's denial of its motion for a new trial on the ground that various errors committed by the judge and by plaintiff's counsel warrant reversal. The first of these errors, according to defendant, occurred when the district court admitted two exhibits tendered by plaintiff that were irrelevant and unduly prejudicial to defendant. Specifically, the district court admitted plaintiff's employment application, which defendant kept in its files, and a letter written by plaintiff and two other black employees to the international union complaining that the local union discriminated against blacks working for defendant.

When plaintiff offered his employment application for admission, the district court asked defendant's trial counsel, who did not represent defendant on appeal, if he had any objections, to which defendant responded "no objection." Defendant did not object to the application until, after it was admitted without objection, James Shetler,

defendant's manager of employee relations, began to testify regarding certain notations that had been placed on plaintiff's application. The application contained two comments that were written in handwriting different from plaintiff's. First, the application bore the notation "Negro," and second, the application contained the comment "March—1966—Arrested For Marching in Demonstration." When Shetler began to testify about these comments, defendant objected on the grounds that the comments were irrelevant. Even if they were relevant, defendant continued, their prejudicial effect outweighed their relevance.

First, this court finds that defendant's objection was untimely because it was not made at the time the application was tendered for admission. *Terrell v. Poland,* 744 F.2d 637, 638 (8th Cir.1984) (per curiam); *Typographical Service, Inc. v. Itek Corp.,* 721 F.2d 1317, 1320 (11th Cir.1983). As the District of Columbia Circuit emphasized, "if 'the evidence is received without objection it becomes part of the evidence in the case, and is usable as proof to the extent of whatever rational persuasive power it may have.'" *Passaic Daily News v. N.L.R.B.,* 736 F.2d 1543, 1554 (D.C.Cir. 1984) (quoting C. McCormick, Handbook of the Law of Evidence 113 (2d ed. 1972)). Where a party could have objected at the time the evidence was first offered and admitted, the party may not be permitted to object to selective bits and pieces of that evidence at a later time.

■ For some reason, plaintiff did not argue this waiver issue, and the district court did not address it. Instead, the district court determined that, because defendant kept the application in its file where plaintiff's supervisors could have referred to it, the application bearing the two challenged notations was relevant to the issue of discrimination and not unduly prejudicial. Thus, even if defendant had not waived its objections to the exhibit, defendant would have to prove to this court that the district court abused its discretion in permitting plaintiff's counsel to question Shetler about the notations. These racial remarks, however, are relevant in a case where, as here, plaintiff charges defendant with race discrimination. Under these circumstances, this court cannot conclude that the district court abused its discretion by admitting plaintiff's employment application.

Defendant also challenges the district court's decision to admit a letter written by plaintiff and two other black employees to the international union charging the local union with discrimination against blacks. Defendant objected to the admission of the letter on the grounds that it was "immaterial and irrelevant." The district court overruled defendant's objection, finding that the letter was relevant to the bias and credibility of Rene Dinneweth, the president of the local union, when plaintiff wrote the letter. At a sidebar conference, defendant informed the court that Dinneweth was one of defendant's witnesses. Before allowing plaintiff to testify regarding this letter, however, the district court instructed the jury that "[y]ou are not to consider the contents as to the truth or falsity of the matters contained in the letter but only as to the issues of ... credibility, motive, intent, design of [Rene Dinneweth]."

■ This court agrees with the district court that, while the issue whether the union discriminated against plaintiff was irrelevant to whether defendant discriminated against plaintiff, the letter was relevant to demonstrate that plaintiff had a poor relationship with Dinneweth. Since Dinneweth planned to testify, and did, about the facts underlying this lawsuit, plaintiff was entitled to reveal to the jury any facts that might affect Dinneweth's credibility. Consequently, the district court did not abuse its discretion by admitting, with a limiting instruction, the challenged letter into evidence. Because defendant did not argue in the trial court that the letter's prejudicial impact outweighed its relevance, defendant has waived that objection on appeal, and this court will not address that contention. *Davis v. Ball Me-*

*morial Hospital Association, Inc.,* 753 F.2d 1410, 1419 (7th Cir.1985).

Next, defendant argues that the court should have granted a new trial because plaintiff's counsel committed reversible error by making prejudicial remarks to the jury in closing argument. First, plaintiff referred to the percentage of blacks in the City of Rock Island, although plaintiff had introduced no evidence on that point. Second, plaintiff argued:

> This is a bad company. This is a bad, bad company. They don't care about people. They have not come in here in this court today to tell you the truth, to assist you with the presentation of evidence in arriving at the truth. They have come here today to cloud the issue, to paint the picture that never existed. And quite frankly to say to you that they don't believe that you will exercise your good common sense or they suddenly somehow believed that you, too, not being a minority that maybe you also will say 'I don't care either.' And I don't believe that is true.

Defendant objected immediately when plaintiff attempted to contrast the percentage of blacks within the Rock Island community with the percentage of blacks that worked for defendant. The court sustained the objection and instructed the jury to disregard that statement because no evidence had been offered regarding the percentage of blacks in Rock Island. After the jury retired, defendant moved for a mistrial on the basis of this remark. The court denied defendant's motion, commenting, "I did instruct the jury to disregard it and I don't believe that the nature of the statement is such that the jury will not follow my instructions and disregard it. I don't believe they were so inflammatory or so prejudicial to the defendant as to that comment as to require a mistrial."

■ This court notes that a party's improper comments during closing argument rarely rise to the level of reversible error. *See, e.g., Canada Dry Corp. v. Nehi Beverage Co.,* 723 F.2d 512, 526–27 (7th Cir.1983); *Lenard v. Argento,* 699

F.2d 874, 894 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84; *Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1246 (7th Cir.1982), *aff'd,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). The district court's prompt response to defendant's objection and its cautionary instruction to the jury mitigated the harm that followed from plaintiff's improper reference to the contrast between the blacks employed by defendant and the blacks present in the Rock Island community as evidence of defendant's intentional discrimination against blacks. *See Lenard,* 699 F.2d at 897; *Vaughn v. National Tea Co.,* 328 F.2d 128, 130 (7th Cir.1964). Also, we note that the improper comment took up only a brief moment in plaintiff's lengthy argument, *see Canada Dry Corp.,* 723 F.2d at 527, which counsel did not repeat, *see Spray-Rite Service Corp.,* 684 F.2d at 1246.

■ Defendant's second challenge to plaintiff's closing argument is even less availing than its first. Although counsel may not express his or her own beliefs regarding the honesty of the opposing party's witnesses, *see Lenard,* 699 F.2d at 897, counsel may argue that the evidence presented demonstrates the lack of credibility of these witnesses, *see Heald v. Milburn,* 125 F.2d 8, 11 (7th Cir.1942), *cert. denied,* 316 U.S. 681, 62 S.Ct. 1267, 86 L.Ed. 1754. Accordingly, this court cannot find that plaintiff's argument, to which defendant did not object, presented any grounds for reversal.

Finally, defendant argues that this court should grant a new trial because the district court failed to instruct the jury concerning the need for plaintiff to establish a prima facie case of discrimination, the elements that constitute a prima facie case, and defendant's burden of proof in rebutting the prima facie case. Defendant has failed to point to any place in the record to show either that it tendered an instruction on these issues that the court rejected or that it objected to the instructions that were given. The instructions that defend-

ant now challenges as deficient consist of the following:

> You are instructed with respect to plaintiff's claim of racial discrimination that plaintiff has the burden of proving by a preponderance of the evidence that the defendant intentionally discriminated against plaintiff because of his race.

> With regard to plaintiff's claim that he was subjected to different terms and conditions of employment because he was black—that is, the claims of harassment and/or denial of opportunities for change in job classification and/or improper layoff procedures—he has the burden of proving separately as to each claim each of the following propositions:

> First, He was intentionally subjected to different terms and conditions of employment than white employees.

> Second, That the reasons given by the defendant for acting in the manner [it did] were but a pretext.

> Third, That if he had not been black he would not have been subjected to different terms and conditions of employment than white persons.

> Fourth, That as a result of being subjected to different terms and conditions of employment he has been damaged.

> You are instructed that the reasons assigned by the defendant for acting in the manner [it did] are proper and the reasons to dispel inference of race discrimination, unless you find that the reasons were a pretext—that is, a cover-up for race discrimination.

This court frequently has held that a party's failure at trial to tender instructions that it believes are proper or to object to the challenged instructions prevents that party from raising that issue on appeal. *See, e.g., Parrett v. City of Connersville,* 737 F.2d 690, 698 (7th Cir.1984), *cert. dismissed,* — U.S. —, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); *Robison v. Lescrenier,* 721 F.2d 1101, 1112 (7th Cir.1983); *Schroeder v. C.F. Braun & Co.,* 502 F.2d 235 (7th Cir.1974). In *Ellis v. City of Chicago,* 667 F.2d 606, 610 (7th Cir.1981), this court ex-

plained the requirement for timely objections to potentially deficient instructions. According to this court, the rule is designed "to permit the district judge to consider and correct any errors before the jury begins its deliberations, thus avoiding the delay and expense necessitated by a retrial." *Id.* In this case, if the record on the waiver issue were clearer, this court would not hesitate to hold that defendant waived its objections to the court's instructions.

 Assuming, however, that defendant did object to the challenged instructions during the proceedings below,[1] this court will review the instructions to determine whether the court conveyed the "correct message" to the jury. *Wilk v. American Medical Association,* 719 F.2d 207, 218–19 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). In reviewing the adequacy of jury instructions, the reviewing court "must look to the instructions as a whole, in a common sense manner, avoiding fastidiousness." *Id.* With respect to the prima facie element, this court noted in a recent case that the elements necessary to establish a prima facie case of discrimination will vary depending upon the type of employment practice or decision challenged. *Coates,* 756 F.2d at 531. In essence, a plaintiff must demonstrate that he or she is a member of a protected class, that he or she was similarly situated to members of an unprotected class, and that he or she was treated differently from those unprotected persons. *Id.* This court finds that the instructions in this case conveyed the correct message to the jury that plaintiff had to prove that defendant subjected him to different terms and conditions of employment from those that applied to white employees and that defendant would not have subjected him to these different terms and conditions if he were not black. These instructions embody the essence of a prima facie case of discrimination and, thus, are not erroneous.

---

1. The record on this point is not clear.

■ We find similarly unpersuasive defendant's challenge to the court's instructions on defendant's burden of proof. Defendant argues that the court failed to instruct the jury regarding defendant's "burden to meet and dispel a prima facie [case]." The district court instructed the jury that, unless defendant's reasons for treating plaintiff differently were pretextual, the reasons were "proper." At this point, the court emphasized for the second time that plaintiff carried the burden of proving that defendant intentionally discriminated against him. This court finds that these instructions reflect the standards governing section 1981 actions and are not in error.

## IV. Damages

■ Defendant's last challenge on appeal is that the jury's awards of $75,000.00 as compensatory damages for mental distress and $150,000.00 as punitive damages are excessive and against the weight of the evidence. While a reviewing court must accord substantial deference to a jury's determination of compensatory damages, *see Levka v. City of Chicago,* 748 F.2d 421, 424 (7th Cir.1984), the court must also ensure that the award is supported by competent evidence. *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 1052 n. 20, 55 L.Ed.2d 252 (1978); *Busche v. Burkee,* 649 F.2d 509, 519 (7th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212. Thus, this court must review the record to determine whether plaintiff introduced evidence sufficient to support an award of $75,000.00 for mental distress.

In the transcript of the five-day trial, there is a paucity of references to any emotional harm that plaintiff suffered as a result of defendant's discrimination. Dr. Robert Wells, plaintiff's family physician, testified primarily concerning a lung condition for which he treated plaintiff in the early 1970's. Dr. Wells also testified that he has seen plaintiff approximately once a year for the last four or five years to give him a physical. During these physicals, Dr. Wells testified, he noticed that plaintiff

was concerned about finding a job. According to Dr. Wells, "it has preyed on him psychologically because he doesn't like [the] position his unemployment has put him in: well, let's say a self-respect standpoint, from a family standpoint, all of these things." No evidence was presented that Dr. Wells ever treated plaintiff for depression or prescribed any drugs for emotional distress.

Plaintiff testified that he felt humiliated as a result of defendant's discrimination. He stated that on one occasion defendant reprimanded him for not wearing his safety glasses, even though white employees were not wearing their glasses at the time. As a result of this incident, plaintiff testified that "I felt about as low as any man could feel. I felt just like I wasn't human out there." Arthur Freeze, a white former employee, corroborated plaintiff's testimony by stating that, after plaintiff was singled out for discipline, plaintiff felt "disgusted." Additionally, plaintiff testified that, when Pribble yelled at him, plaintiff felt as though he had been "slap[ped] ... in the face" and "insulted." Again, Freeze corroborated plaintiff's testimony by stating that, after Pribble yelled at plaintiff, plaintiff would become "very upset, very quiet."

■ This evidence clearly supports some award to compensate plaintiff for the mental distress that he suffered. *See Carter v. Duncan-Huggins Ltd.,* 727 F.2d 1225, 1238 (D.C.Cir.1984). In the absence of any evidence that plaintiff was treated for emotional harm or that he became depressed for any sustained period of time, however, this court finds that $75,000.00 is excessive compensation for the humiliation that plaintiff experienced. A review of mental distress awards in discrimination cases from this and other circuits leads us to conclude that an award of $35,000.00 is the outermost award that can be supported on this record. *See, e.g., Carter,* 727 F.2d at 1238 ($10,000.00 award sustained as not "unreasonable" in section 1981 action in which plaintiff suffered "seventeen months of incessant humiliation, harassment, and feelings of isolation"); *Block v. R.H. Macy & Co.,* 712 F.2d 1241, 1245 (8th Cir.1983) ($12,402.00 award sustained as "the maxi-

mum which could be deemed reasonable on this evidence" where, as a result of discrimination, plaintiff "suffered sleeplessness, anxiety, embarrassment and depression"); *Phillips v. Hunter Trails Community Association*, 685 F.2d 184, 190 (7th Cir.1982) ($25,000.00 award for humiliation and embarrassment in housing discrimination suit reduced to $10,000.00). Accordingly, this court orders defendant's motion for a new trial to be granted unless plaintiff accepts a remittitur reducing the $75,000.00 award to $35,000.00.

■■■■■ Defendant's final contention on appeal concerns the propriety of the punitive damage award. Defendant argues that the jury's award of $150,000.00 in punitive damages is excessive and against the manifest weight of the evidence. Although a punitive damage award may be appropriate in some cases to punish a wrongdoer for his or her outrageous conduct and to deter others from engaging in similar conduct, such award must be supported by the record and may not constitute merely a windfall to the prevailing party. *McKinley v. Trattles*, 732 F.2d 1320, 1327 (7th Cir. 1984); *Lenard*, 699 F.2d at 890. If a reviewing court concludes that a jury's award of punitive damages is merely a windfall to the prevailing party, the court may reverse that award. *Rodgers v. General Motors Corp.*, 739 F.2d 1102, 1109 (6th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985).

■■■ In a section 1981 action, a finding of liability for discrimination against a defendant does not automatically entitle the prevailing plaintiff to an award of punitive damages. *See, e.g., Lindsey v. Angelica Corp.*, 508 F.Supp. 363, 366 (E.D.Mo.1981); *Darensbourg v. Dufrene*, 460 F.Supp. 662, 664 (E.D.La.1978). In this case, although the record discloses some evidence of defendant's ill will against plaintiff, we do not believe that the record supports such a sizable award. That both the trial court and this court already have construed as excessive two components of the jury's awards strengthens our conviction that the jury also improperly awarded punitive damages. *Rodgers*, 739 F.2d at 1109. Additionally, the fact that the jury delibera-

tions, after this five-day trial, totalled less than one hour further demonstrates the likelihood that the jury was motivated by improper reasons, such as caprice and prejudice, when it awarded punitive damages. *See Smith v. Wade*, 461 U.S. 30, 59, 103 S.Ct. 1625, 1641, 75 L.Ed.2d 632 (1983) (Rehnquist, J., dissenting). Under these circumstances, this court concludes that the $150,000.00 punitive damage award should be reduced to $20,000.00. In the event that plaintiff should refuse to accept this amount, this court grants a new trial limited to the issue of punitive damages.

## V. Conclusion

For the foregoing reasons, this court AFFIRMS the district court's denial of defendant's motion for judgment notwithstanding the verdict. This court also AFFIRMS the district court's denial of defendant's motion for a new trial unless plaintiff refuses to accept a remittitur of $40,000.00, reducing the $75,000.00 mental distress award to $35,000.00, in which case this court grants a new trial limited to the issue of damages for mental distress. Similarly, this court grants a new trial on the issue of punitive damages unless plaintiff agrees to a remittitur, reducing the award to $20,000.00.