Robert PROBUS and Geneva Probus, Plaintiffs-Appellants,

v.

K-MART, INC., and Keller Industries, Inc., Defendants-Appellees.

No. 85–3045.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1986.
Decided June 30, 1986.

---

Donald R. Forrest, New Albany, Ind., for plaintiffs-appellants.

Sandra Young, Purcell & Wardropse, Chtd., Chicago, Ill., for defendants-appellees.

Before WOOD and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The questions we are required to decide in this appeal from a judgment for the defendants in a products liability suit governed by Indiana law are (1) whether the trial court erred in excluding the plaintiff's evidence of subsequent remedial measures under Fed.R.Evid. 407 and (2) whether certain comments made by defendants' counsel in closing arguments warrant the grant of a new trial. For the reasons stated below, we will affirm.

## I

On June 4, 1982, the plaintiff, Robert Probus, injured his back when he fell from a ladder manufactured by defendant Keller Industries and sold by defendant K-Mart, Inc. In his complaint, filed May 7, 1984, the plaintiff alleged that he had been using the ladder in the course of repairing his barn. Paragraph 6 of the complaint alleged that:

> The plaintiff set the ladder in a safe position and extended it to approximately 15 feet then ascended to the fourth rung from the top and began work on the barn. [He] was thrown from the ladder when the plastic tip broke causing the entire ladder to tip and fall towards the building whereupon the right hand side of the ladder kicked out sending the plaintiff to the ground as a result of which he sustained personal injuries and damages.

In Count I, the plaintiff alleged that both defendants were "negligent in the design, manufacture, inspection, testing and sale of said plastic-tipped aluminum ladders." In Counts II and III, he alleged that K-Mart had breached implied warranties of fitness and mechantability, respectively. In Count IV, he alleged that the ladder manufactured by Keller Industries was negligently designed, unreasonably dangerous, and in a defective condition. Count V reiterated the allegations of Count IV with regard to K-Mart.[1] The jury, on October

---

1. In Count VI, the plaintiff's wife sought damages for loss of consortium. The district court granted defendants' motion for directed verdict on the consortium claim and on the plaintiff's claim for damages based upon impaired earning capacity. The plaintiff appeals from both or-

24, 1985, returned a verdict in the defendants' favor on liability. No post-trial motions were filed.[2] This appeal followed.

## II

### A. Evidence of Subsequent Remedial Measures

At trial the plaintiff's expert witness, Dr. Dean Harper, a professor of chemical engineering at the University of Louisville, testified that the cause of Probus's fall was a failure of the plastic end cap on the left side of the metal extension ladder. Dr. Harper testified further that the cap had begun to crack prior to the plaintiff's use of the ladder on the day of his fall. He stated that part of the plastic had chipped away owing to the impact of the upper and lower halves of the ladder sliding together in the normal course of retracting the ladder. According to Dr. Harper's testimony, the plastic used in the cap was not flexible enough, in its thus weakened state, to withstand the stress arising out of routine usage. He pointed out that the material was also not resistant to common solvents such as those found in paint. Dr. Harper concluded that the material used in the cap was inappropriate for its intended function.

The defendants introduced the testimony of two expert witnesses, Dr. Lawrence J. Broutman, a professor of materials engineering at the Illinois Institute of Technology and owner of a private consulting design firm specializing in plastics, and Jon Ver Halen, an expert in the field of industrial engineering. Dr. Broutman testified that the plastic cap was flexible and resistant to impact. He also noted that his examination of the cap disclosed no solvent damage. Dr. Broutman testified further that in his opinion the cap had fractured sometime after the date of Probus's fall and that the fracture was caused by a type of impact not arising out of normal usage. He concluded that the plastic used in the cap was appropriate for its application.

Ver Halen testified that the fracture of the end cap could not have occurred as a result of the use the plaintiff alleged he was making of the ladder at the time of his fall. He also testified that the fracture would not have caused the plaintiff to fall from the ladder even had it occurred while the plaintiff was using it to repair the barn. Ver Halen stated that the fracture would have caused at most an eighth of an inch of movement, and that such a movement would have been imperceptible to a person using the ladder.

In rebuttal, the plaintiff made an offer of proof that the defendants, subsequent to the plaintiff's fall, had changed the material used in the ladder end caps. In particular, the plaintiff claimed that the defendants had strengthened the cap with glass fiber reinforcement. On the basis of Fed. R.Evid. 407, the district court excluded evidence of subsequent remedial measures on the ground that it was offered to prove liability. The plaintiff claims that the evidence was properly admissible for the purpose of impeaching the testimony of the defendants' expert witnesses that the plastic used in the caps at the time of the accident was appropriate for its intended application. We disagree.

Fed.R.Evid. 407 provides:

When, after an event, measures are taken which, if taken previously, would have made an event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such

---

ders. However, in light of our affirmance of the verdict in favor of the defendants on the issue of liability, we need not consider the propriety of the district court's orders regarding the directed verdicts on plaintiffs' consortium and impaired-earnings claims.

2. Although the plaintiff made no post-judgment motion for a new trial on the basis of these errors, it is well settled that such a motion is not a prerequisite to appeal. *See, e.g., Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1349 n. 24 (7th Cir.1983); *American Distilling co. v. Wisconsin Liquor Co.,* 104 F.2d 582 (7th Cir.1939).

as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The purpose of Rule 407 is to promote safety by removing the disincentive to take post-accident safety measures that would exist if the accident victim could introduce evidence of these measures on the issue of the defendant's liability. *See, e.g., Public Service Co. v. Bath Iron Works Corp.*, 773 F.2d 783, 791 (7th Cir.1985); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 469 (7th Cir.1984). The crux of the plaintiff's argument is that, because the defendants introduced testimony that the material used in the plastic end cap was appropriate for its application in the operation of the ladder, he may impeach that testimony with evidence of a more flexible and durable material subsequently used by the defendants in the manufacture of the end caps. The plaintiff's argument proves too much.

 It is undoubtedly true that evidence of subsequent remedial measures can be said to contradict, and hence, in a sense "impeach" a defendant's contention that he was exercising due care or that materials used in the manufacture of a product were appropriate for their intended application. Yet, allowing that and no more to satisfy the impeachment exception would elevate it to the rule. *Bath Iron Works Corp.*, 773 F.2d at 792; *Flaminio*, 733 F.2d at 468; *Oberst v. International Harvester Co.*, 640 F.2d 863, 866 (7th Cir. 1980). It is, of course, an entirely different matter if the feasibility of alternative materials is genuinely disputed. *See, e.g., Flaminio*, 733 F.2d at 468; *Oberst*, 640 F.2d at 866. Yet, that is not the case before us, because the plaintiff does not contend that the defendants testified that the material used in the end cap was either the best material available or that the use of another material would not have been feasible. Nor does the plaintiff argue that he was barred from introducing evidence of

the type of material used by the defendants' competitors. It is also inconsistent with Rule 407 to admit evidence of a change in the plastic end caps to raise the inference that the defendants had recognized the inadequacy of the plastic used at the time the plaintiff purchased the ladder. *Bath Iron Works Corp.*, 773 F.2d at 792. Accordingly, we hold that the district court did not err in excluding the evidence offered by the plaintiff of the use of another material in the end caps defendants manufactured and sold.[3]

### B. Defendants' Closing Remarks

The plaintiff argues that, by improperly attacking the credibility of his key witness, Dr. Harper, in closing argument to the jury, defendants' counsel committed reversible error. In particular, the plaintiff contends that the following remarks were improper:

The gall! Just the gall of Dr. Harper! Why didn't Dr. Harper come back here on rebuttal like Mrs. Probus did to contradict something that Dr. Broutman said? Dr. Broutman wrote the books. he knows what he is talking about.

The gall! Just the gall, to do that, and not to have the guts to bring Harper back in on the witness stand. He wasn't going to bring him back on the witness stand.

The plaintiff objected immediately to these remarks, but the district court overruled his objection. As we recently noted in *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1311 (7th Cir.1985), "improper comments during closing argument rarely rise to the level of reversible error." *See also Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512, 526–27 (7th Cir.1983); *Lenard v. Argento*, 699 F.2d 874, 894 (7th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir.1982), *aff'd*, 465 U.S. 752, 104

---

**3.** Plaintiff's contention that the presence of a defective-design issue renders inapplicable Rule 407 to the instant case is erroneous. *See, e.g., Flaminio v. Honda Motor Co.*, 733 F.2d 463,

468–69 (7th Cir.1984) (Rule 407 applies even though defective-design issue not addressed to culpability of the defendant's conduct).

S.Ct. 1464, 79 L.Ed.2d 775 (1984). This is especially true when the comment constituted but a brief part of an argument. *Ramsey,* 772 F.2d at 1311; *Canada Dry,* 723 F.2d at 527.

■ The tone of counsel's remarks here was unnecessarily harsh, perhaps even belligerent and derisive, but that does not mean that they were improper argument. The plaintiff asserts that these remarks were intended to impugn Dr. Harper's credibility. It is certainly true that counsel may not express his beliefs regarding the honesty of the opposing party's witnesses. *Ramsey,* 772 F.2d at 1311; *see Lenard,* 699 F.2d at 897. Yet, counsel's comments in the instant case did not constitute the expression of such a belief.

■ Taken in context, defense counsel's comments addressed Dr. Harper's testimony that the material used by the defendants in the end caps was inappropriate. The credibility of a witness's testimony is, under appropriate circumstances, fair game in closing arguments. *See, e.g., Ramsey,* 772 F.2d at 1311; *Heald v. Milburn,* 125 F.2d 8, 11 (7th Cir.), *cert. denied,* 316 U.S. 681, 62 S.Ct. 1267, 86 L.Ed. 1754 (1942). The defendants presented evidence to counter Dr. Harper's conclusion that the end cap material was inappropriate. Dr. Harper did not take the stand in rebuttal. Defendants' counsel was arguing that Dr. Harper's failure to do so suggested that he had no response. It is, of course, permissible for counsel to discuss the weaknesses of an opponent's case. We also note that the district court instructed the jury that closing arguments were not evidence. Accordingly, we hold that defense counsel's comments do not present grounds for reversal.[4]

### III

For the reasons stated above, the order of the district court entering judgment in favor of the defendants is

AFFIRMED.

---

**4.** However, even if the remarks were improper, they were brief, *see Canada Dry Corp. v. Nehi Beverage Co.,* 723 F.2d 512, 527 (7th Cir.1983), and counsel did not repeat them, *see Spray-Rite*

---

*Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1246 (7th Cir.1982), *aff'd,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), and they in no way warrant reversal.